(February 4, 1895.)

## BELLEVUE ROLLER MILL COMPANY v. LONDON AND LANCASHIRE FIRE INSURANCE COMPANY.

[39 Pac. 196.]

INSURANCE—MANUFACTURING ESTABLISHMENT—OPERATION CLAUSE—VACANT AND UNOCCUPIED CLAUSE—FORECLOSURE PROCEEDING CLAUSE—WAIVER.—A policy of fire insurance on the flouring-mill of the plaintiff, the Bellevue Roller Mill Company, dated September 9, 1893, for one year, provided as follows: "This policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the subject of insurance be a manufacturing establishment and cease to be operated for more than ten consecutive days." It appeared that said mill was compelled to suspend operations during a portion of each year because of the water freezing in the millrace which conducted it to the mill, and that the agent of the insurance company, knowing this fact, had granted repeated renewals of the insurance on said mill for periods upward of one year, and that on the 9th of September, 1893, the policy sued on was issued as a renewal, for one year, of a former

policy without written application and received the premium there-for. On December 9, 1893, the mill closed down and so remained until May 10, 1894, when the loss occurred. *Held*, that under the facts of this case the insurance company had waived the pro-vision of the policy above quoted. Said policy contains the fol-lowing provision: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days." *Held*, under the facts of this case that the mill build-ing did not become "unoccupied" within the meaning of that word as used in said policy. Said policy contains the following pro-vision: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if, with the knowl-edge of the insured, foreclosure proceedings be commenced or no-tice given of sale of any property covered by this policy by virtue of any mortgage or trust deed." *Held*, that as the foreclosure pro-ceedings complained of were not commenced with the knowledge of the insured, said provision of the policy had not been violated.

(Syllabus by the court.)

APPEAL from District Court, Logan County.

W. E. Borah, for Appellant.

In the body of the insurance policy sued on in this action is found the following provision: "1. This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the subject of insurance be a manu-facturing establishment and cease to be operated for more than ten consecutive days." If the mill ceased to operate for ten consecutive days the policy would be avoided, even if the agent of the company knew it was in the habit of closing down dur-ing certain seasons, or that it had ceased to operate under prior policies. (*Stone v. Insurance Co.,* 153 Mass. 475, 27 N. E. 6; *Day v. Insurance Co.,* 70 Iowa, 710, 29 N. W. 443; *Dover Glass Works Co. v. Insurance Co.,* 1 Marv. 32, 65 Am. St. Rep. 264, 29 Atl. 1039; *Keith v. Insurance Co.,* 10 Allen, 228; *Herrman v. Insurance Co.,* 85 N. Y. 162, 39 Am. Rep. 644; *England v. Insurance Co.,* 81 Wis. 583, 29 Am. St. Rep. 917, 51 N. W. 954.) The policy expressly provided that no agent could waive or be deemed to have waived any of the provisions of the policy, and the insured could not claim a waiver except

the same be made in writing and be indorsed upon the policy.
(*Enos v. Insurance Co.,* 67 Cal. 621, 8 Pac. 379; *Gladding v. Insurance Co.,* 66 Cal. 6, 4 Pac. 764; *McCormick v. Insurance Co.,* 66 Cal. 361, 5 Pac. 617; *Shuggart v. Insurance Co.,* 55 Cal. 408; *West Coast Lumber Co. v. Insurance Co.,* 98 Cal. 502, 33 Pac. 258; *Moore v. Insurance Co.,* 141 N. Y. 219, 36 N. E. 191; *Hankins v. Insurance Co.,* 70 Wis. 1, 35 N. W. 34; *Kyte v. Insurance Co.,* 144 Mass. 43, 10 N. E. 518; *Martin v. Insurance Co.,* 85 N. Y. 278; *Cleaver v. Insurance Co.,* 65 Mich. 527, 8 Am. St. Rep. 908, 32 N. W. 660; *Gould v. Insurance Co.,* 90 Mich. 302, 51 N. W. 455; *O'Reilly v. Insurance Co.,* 101 N. Y. 575, 5 N. E. 568; *Burr v. Insurance Co.,* 84 Wis. 76, 36 Am. St. Rep. 905, 54 N. W. 22; *Universal Ins. Co. v. Weiss,* 106 Pa. St. 20; *Hutchinson v. Insurance Co.,* 21 Mo. 97, 64 Am. Dec. 218, and note.)   The policy sued upon provides: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days." To constitute occupancy under this clause, a building must be used in the manner and for the purpose incident to such building, and to constitute occupancy of a building for manufacturing purposes there must be some practical use or employment of the property.   Its use as a place of storage merely is not sufficient.   (*England v. Insurance Co.,* 81 Wis. 583, 29 Am. St. Rep. 917, 51 N. W. 954; *Halpin v. Insurance Co.,* 118 N. Y. 165, 23 N. E. 482; 120 N. Y. 73, 23 N. E. 989; *Ashworth v. Insurance Co.,* 112 Mass. 422; *Limburg v. Insurance Co.,* 90 Iowa, 709, 48 Am. St. Rep. 468, 57 N. W. 626; *Continental Insurance Co. v. Kyle,* 124 Ind. 132, 19 Am. St. Rep. 77, 24 N. E. 727; *Reed v. Lancashire Insurance Co.,* 19 Hun, 284; *Hartshorne v. Insurance Co.,* 50 N. J. L. 427, 14 Atl. 615; *Home Insurance Co. v. Scales,* 71 Miss. 975, 42 Am. St. Rep. 512, 15 South. 134.)   "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto shall be void, if with the knowledge of the insured foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed." The

courts have held that this is a fair, reasonable and binding pro-vision, the violation of which avoids the policy. (*Titus v. Glen Falls Co.*, 81 N. Y. 410; *Quinlan v. Washington Ins. Co.*, 133 N. Y. 356, 28 Am. St. Rep. 645, 31 N. E. 31; *Meadows v. Hawkeye Ins. Co.*, 62 Iowa, 387, 17 N. W. 600; *McIntire v. Insurance Co.*, 102 Mass. 230, 3 Am. Rep. 458; *Moore v. Insurance Co.*, 141 N. Y. 219, 36 N. E. 191; *West v. Insurance Co.*, 10 Utah, 442, 37 Pac. 685; *Merchants' Ins. Co. v. Brown*, 77 Md. 79, 25 Atl. 992.)

George H. Stewart and R. F. Buller, for Respondents.

Policies of insurance are written for the purpose of in-demnity and that they should be construed in favor of the assured. (*Wallace v. German-American Ins. Co.*, 41 Fed. 742; *Pennsylvania Mut. Co. v. Wiler*, 100 Ind. 92, 50 Am. Rep. 769; *Friezen v. Allemania Fire Ins. Co.*, 30 Fed. 352; 1 May on Insurance, sec. 175.) Where the policy is issued containing conditions inconsistent with the facts, and the agent knew the facts when the policy was issued, the conditions are waived, so far as they conflict with the facts known to the agent. (*De Puy v. Delaware Ins. Co.*, 63 Fed. 680; *Mesterman v. Insurance Co.*, 5 Wash. 524, 34 Am. St. Rep. 877, 32 Pac. 458.) The insurance company contended that as the property insured was located on leased land, the same being school land, that the policy was avoided under the condition that the title should be that of absolute owner, and the court holds that the company is estopped from denying the ownership of the assured, the same being facts known to the solicitor at the time the policy was written by him, notwithstanding a clause in the policy that no person, unless authorized in writing, shall be deemed the agent of the company. (*Brandup v. Insurance Co.*, 27 Minn. 393, 7 N. W. 735; *First Nat. Bank v. American etc. Ins. Co.*, 58 Minn. 492, 60 N. W. 345; *American etc. Ins. Co. v. McCrea*, 8 Lea, 513, 41 Am. Rep. 647; *Farnum v. Phoenix Ins. Co.*, 83 Cal. 246, 17 Am. St. Rep. 233, 23 Pac. 869.) As to the ques-tion of occupancy we cite *Herrman v. Merchants' Ins. Co.*, 81 N. Y. 184, 37 Am. Rep. 488. As the insurance company prepares the contract, and embodies in it such conditions as

it deems proper, it is in duty bound to use language so plain and clear that the insured cannot mistake or be misled as to the burdens and duties thereby imposed upon him. (Wood on Insurance, 140, 141; *Fisher v. Crescent Ins. Co.,* 33 Fed. 549; 1 May on Insurance, sec. 175; *Resident etc. Ins. Co. v. Hannowld,* 37 Mich. 103.)

Action by the Bellevue Roller Mill Company, a corporation, and the First National Bank of Idaho, a corporation, against the London and Lancashire Fire Insurance Company, a corporation, on a policy of insurance. Verdict for plaintiffs, and judgment thereon. Motion for new trial made and denied. Defendant appeals. Affirmed.

The facts are substantially as follows: This action was brought to recover $1,250, with interest—the amount of a policy of insurance issued on September 9, 1893, to the plaintiff, the Bellevue Roller Mill Company, on a certain flouring mill situated at the town of Bellevue, Logan county. The plaintiff, the First National Bank of Idaho, held a mortgage against said roller mill company, on said mill and the machinery therein, to secure the payment of a certain $7,000 promissory note. Said mortgage bears date October 11, 1892, and said note became due and payable on July 10, 1893. Said policy of insurance was made payable to said First National Bank of Idaho as its interest might appear, and placed in its possession by the appellant. The policy of insurance was a renewal of another policy, and renewals had been made for each of several years preceding the renewal of September 9, 1893, sued on herein. No formal application had been made for any of such renewals. It was the custom of Lemmon & Boone, the resident agents of the defendant corporation, at the expiration of each policy, to issue a new policy of renewal upon said property without a written application therefor. It was the understanding of the roller mill company that said agents should keep said property insured. From time to time their bills for the premium on the policies so issued were presented to and paid by said roller mill company. The policy sued on was issued by said agents, and sent directly to the plaintiff, the First National Bank of Idaho, at Boise City, and not presented to nor examined by the

assured company. The defense to this suit was (1) that at
the time of the alleged loss the premises was a manufacturing
establishment, and that, contrary to the provisions of said policy,
the insured had ceased to operate the same, without the con-
sent of defendant indorsed on the policy; (2) that said mill
building had, contrary to the provisions of said policy, for a
period longer than ten days, become vacant and unoccupied,
without the agreement of the insurer indorsed on said policy;
(3) that foreclosure proceedings were commenced without the
consent of the insurer indorsed on said policy. The mill
ceased to be operated on or about the 9th of December, 1893,
and so continued until it was burned, on or about May 10, 1894.
The defendant knew at the time the policy was written that
said mill was run by water power, and also knew that for
months of each year it was impossible to operate same, on ac-
count of the cold weather freezing the water in the race used
for conducting the water to said mill. There was a small
amount of wheat and bran in said mill from the time it closed
down until it burned. It is shown by the evidence that a feed
mill was placed in said mill, and used at several different times
through the winter of 1893 and 1894 to grind small quantities
of feed, and that in less than ten days prior to the destruction
of said mill a small amount of feed had been ground there.
It was further shown that N. C. Larsen, the president of the
roller mill company, went quite frequently to said mill, and
looked through and around it, and had charge thereof. A
foreclosure suit was brought to foreclose the mortgage above
referred to by the said First National Bank of Idaho, as plain-
tiff, against the said roller mill company, as defendant, on the
twenty-first day of April, 1894. The summons in said suit
was served on said roller mill company on the twenty-second
day of April; and within three or four days thereafter, N. C.
Larsen, the president of said roller mill company, informed
Mr. Boone, the agent of said insurance company, that said
foreclosure suit had been brought, and urged Mr. Boone to
assist him in borrowing the money with which to pay off the
amount secured by said mortgage. The case was tried by the
court, with a jury, and a verdict rendered in favor of the plain-

tiff, and judgment entered thereon. A motion for a new trial was made and overruled. This appeal is from the judgment and the order overruling the motion for a new trial.

SULLIVAN, J. (After Stating the Facts as Above.)—There being no material conflict in the evidence, the liability of the defendant insurance company depends upon a proper construction of certain provisions of the insurance policy sued on.

It is contended that as the mill ceased to be operated for ten consecutive days, without the consent of the insurance company indorsed on said policy, the policy is void for that reason. The provision of the policy on that point is as follows: "This policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the subject of insurance be a manufacturing establishment, and cease to be operated for more than ten consecutive days." It is also contended that said mill remained vacant and unoccupied for a period of more than ten days, without the consent of the insurance company indorsed on the policy, and was void for that reason. The provision of the policy on that point is as follows: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied, and so remain for ten days." These contentions will be considered together.

The respondents contend that as the agents of said insurance company knew that said mill was run by water power, and also knew that it could not be operated during cold weather and had not been operated during certain months in each previous year, the above condition of the policy was waived; in other words, that as the agent knew it was an impossibility to operate said mill during cold weather, he, having insured it on the ninth day of September, 1893, for one year, and received the premium for that period, had thereby waived the provision of the policy first above quoted, and that as said policy was issued with full knowledge by the insurance company of the facts that had caused and must cause the operation of said mill to cease for certain months during each

of the several years for which said insurance company had insured said mill, by renewals of the original policy, to hold, under these facts, the policy void, would uphold the insurance company in perpetrating a fraud upon the roller mill company, and assist it in profiting by such fraud. In discussing the principle here involved, it is stated in May on Insurance (volume 2, section 497), as follows: "To deliver a policy with full knowledge of facts upon which its validity may be disputed, and then to insist upon these facts as a ground for avoidance, is to attempt a fraud. This the courts will neither aid nor presume; and when the alternative is to find this, or to find that, in accordance with honesty and fair dealing, there was an intent to waive the known ground of avoidance, they will choose the latter. Such an issue is tantamount to an assertion that the policy is valid at the time of delivery, and is a waiver of the known ground of invalidity. . . . . And any acts, declarations or course of dealing after delivery by the insurers, with a knowledge of the facts constituting a breach of a condition of the policy, recognizing the policy as still valid, and from which the insured might fairly infer that he is protected, will amount to a waiver of such breach, and estop the insurers from setting it up as a defense." We think an insurance company which has issued its policy, with full notice of all the facts in the case, and has received a party's money under circumstances leading him to suppose he is receiving indemnity, is estopped from repudiating the contract. Note 1 to *Insurance Co. v. Lewis,* 30 Mich. 41, contains a citation of numerous authorities illustrating the doctrine of estoppel and waiver through the acts of the agent of the insurance company. Waiver implies actual knowledge of some essential or condition touching the liability of the insurers. In the case at bar the agent of the insurance company had actual knowledge of conditions which rendered the operation of said mill impossible for several months during the year; and we think it clear that this period of nonoperation was incident to the use of the mill, and taken into consideration by the insurance company when it issued said policy for a period covering or including the time of such nonoperation of the policy, and the above-quoted condition was waived. In *Halpin*

v. *Insurance Co.,* 118 N. Y. 165, 23 N. E. 482, the court says, in discussing the nonoccupancy provision in a policy of insurance: "Thus, as has been said, a policy on a church would not be deemed violated from nonoccupation because it is only used on Sundays, nor would a schoolhouse be deemed unoccupied during vacation, nor a manufactory during suspension of business, or on Sundays or holidays, or from breakage of machinery, or from any other temporary cause, because these periods of nonoccupation are incident to the uses of the property, and in contemplation of the parties to the contract. But in this case there was a total and absolute suspension of business. The tenants who had used the property had moved away, and the property was placed in the hands of an agent for rent. The owner was seeking for it new uses and new occupants." It is not contended that said mill building became "vacant," but that it became "unoccupied" within the meaning of the term "unoccupied," as used in said policy. No machinery had been moved out of said building, but a certain feed mill had been moved therein. A small amount of wheat and bran was kept in said building from the time the mill was closed down, in December, until the fire occurred, on May 10, 1894. No one had ever resided or slept in the mill, and no watchman was employed to look after it. N. C. Larsen, the president of the roller mill company had charge of it, and went to it, and into it at short intervals during the time it was not in operation. The owners were in the occupancy of the building described in said policy. The building was not vacant or unoccupied. It contained the machinery, in place, used for manufacture of flour and feed, and was in the possession of, and under the control of, the president of the roller mill company. It was a flouring mill, complete, and in the possession of its owners. The building itself was constructed for the protection of the machinery and temporary protection of the grain and the product manufactured therefrom. It was not intended that the manufactured product should remain in the building longer than suited the owners' convenience; that is, there is nothing in the policy prohibiting the removal of such product at such times as the owners might desire. Except when in operation,

there might be no necessity for keeping stored there flour or wheat, and, under said policy, nothing was insured but the building and machinery.

It is contended by appellant that, to be vacant, the building would have to have the machinery and everything moved out, but that it became unoccupied whenever it ceased to be used in the manner in which it was ordinarily used. As the insurance company waived the provision of the policy which voided it on a cessation to operate the mill for ten consecutive days, it thereby waived that particular occupancy of said building which was necessary when the mill was in operation. The policy prohibited the operation of said mill after 10 o'clock at night, and did not require a watchman to be kept at or in the mill from that time until the following morning, or at all. The mill burned at about 11 o'clock at night. If it had been in operation up to 10 o'clock of that night, probably no one would have been present when it caught fire, for the reason that no one was required to remain in said building during the night. We think the occupancy above shown satisfies the condition, and preserves the obligation, of said policy. In *Moody v. Insurance Co.,* 52 Ohio St. 12, 49 Am. St. Rep. 699, 38 N. E. 1011, the court, in discussing the meaning of the term "occupancy," as used in the insurance policy then under consideration, says: "Strictly construed, occupancy for any lawful purpose would satisfy the condition and preserve the obligation of the policy. Nor does it follow that the dwelling-house is unoccupied merely because it has ceased to be used as a family residence, when the household goods remain ready for use, and it continues to be occupied by one or more members of the family for the purpose of caring for it, and who do care for it." (See *Whitney v. Insurance Co.,* 72 N. Y. 117, 28 Am. Rep. 116; *Insurance Co. v. Smith,* 3 Colo. 422; 17 Am. & Eng. Ency. of Law, 28-33; *Williams v. Insurance Co.,* 24 Fed. 625; *Albion Lead Works v. Williamsburg City Fire Ins. Co.,* 2 Fed. 479; *McMurray v. Insurance Co.,* 87 Iowa, 453, 54 N. W. 354.)

It is also contended that said policy became void by reason of foreclosure proceedings having been commenced by the First National Bank of Idaho to foreclose the mortgage above re-

ferred to.  The provision of the policy upon that point is as follows: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if, with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed."  As will be observed, this provision provides that if, with the knowledge of the insured, foreclosure proceedings be commenced, etc., the policy shall be void.  This was one of the defenses set up by the appellant in this suit, and, in order to make it available, it was incumbent on appellant to establish that said foreclosure suit was commenced with the knowledge of the insured.  The record contains no evidence even tending to establish the fact that the insured had any knowledge whatever of the commencement of said foreclosure suit until the summons was served upon it.  Under our law, a suit is commenced by filing the complaint; and unless the insured had knowledge that such complaint was going to be filed a sufficient length of time before it failed to notify the insurance company thereof, said requirement was one of impossibility.  Said provision must receive a reasonable construction, in case it requires construction, and not be so construed as to require a party to give notice of a fact of which he has no information or knowledge.  But said provision is too plain to require construction.  It is that "the policy shall be void if, with the knowledge of the insured, a foreclosure proceeding be commenced."  Under this provision, if the insured has knowledge that a foreclosure proceeding is about to be brought, then he is required to give notice to the insurance company.  Said forfeiture provision should not extend beyond the reasonable import of the words used therein, and, as they include the party insured only, it would be very materially extending it to include the party who holds the policy as security for a debt due from the insured.

The appellant contends that the answer of the roller mill company, in the foreclosure suit, set up as an offset against the mortgage sought to be foreclosed the negligence of the First National Bank of Idaho for violating said provision of the policy, in not notifying the insurance company of the com-

mencement of said foreclosure proceeding, and obtaining its consent to the bringing of said suit, indorsed on the policy in writing. The fact that the First National Bank of Idaho was not a party to said insurance contract, and was not the party insured, and therefore was not required to give notice to said company of its intention to commence foreclosure proceedings, must not be lost sight of. In the answer referred to, it is not shown that the insured had any knowledge of the commencement of said foreclosure suit until after it had been begun. The forfeiture provision of the policy applies to the knowledge of the insured, and not to that of any other person. It is shown by the record that N. C. Larsen, the president of said roller mill company, did notify the agent of the insurance company of the commencement of said foreclosure suit within three or four days after the service of the summons in that suit, and several days before the loss occurred; and fair dealing then demanded of the agent that he inform Larsen that his company would not consent to carry the risk longer, under said policy, and thus give Larsen opportunity to have procured insurance elsewhere. The agent knew that Larsen had never seen said policy, and knew nothing of its provisions. It is a fact that the record contains the denial of the agent that Larsen notified him of the commencement of the foreclosure suit, but we infer that the jury accepted the evidence of Larsen upon that point. It is further shown by the record that H. E. Miller, one of the stockholders in said roller mill company, had talked with the agent of the insurance company, and had requested him to be very careful, and keep the mill amply insured, and stated to the agent that it was a matter of much importance to him, for in case the mill burned without insurance it would ruin him; and the agent gave Miller to understand that he would attend to it. Under all other facts of this case, good faith and fair dealing required the agent of the insurance company to notify Miller and the roller mill company if it intended to cancel the policy or hold it void for either of the causes set up as a defense, for he knew of the closing down of said mill months before the loss, and of the bringing of said foreclosure suit some two weeks before the loss. He should

have notified them of such intention, if he had it, so as to
have given them opportunity to procure insurance elsewhere,
if they desired so to do. We will not presume negligence or
cunning on the part of the company, but that it acted in good
faith, and, with full knowledge, waived the provisions of the
policy set up as a defense in this suit. The object of the con-
tract of insurance is to secure to the assured indemnity from
loss, for which he agrees to and does pay a certain stipulated
sum. While the insurance contract cannot be strictly called a
unilateral contract, it is prepared by the insurance company,
and all of the conditions are asserted and included by the in-
surer; and a complete knowledge of all the terms and condi-
tions are seldom read, and more seldom understood and con-
sidered, by the insured. It is a fact verified by experience
of all who have any knowledge of insurance, as now conducted,
that after the insured has signed the application he considers
he has done all that is required of him, except the payment of
the premium. The responses in the application are usually
made largely upon suggestions of the agent, and written down
by him and signed by the applicant. This being the recog-
nized method, it is, we think, a conclusive argument in support
of the rule laid down in *West v. Insurance Co.,* 10 Utah, 442,
37 Pac. 685. In that case the court says: "Many of the earlier
decisions appear to hold parties rigidly to the terms of the in-
surance contract. Upon examination of the more recent au-
thorities, it seems clear that the rule of strict construction in
regard to the terms of the insurance policy has been much
relaxed; and the courts now hold that where the insurance
company or its agent has been notified of additional insurance,
or changes in the condition of the property, and no objection
has been made, the company will be estopped from insisting
on a forfeiture because permission, in writing, was not in-
dorsed on the policy. The agent who has power to enter into
contracts of insurance and issue policies may also waive for-
feitures." There can be but one legitimate purpose, but one
purpose which is entitled to recognition by the courts, for which
these multitudinous provisions are inserted, and that is the pro-
tection of the insurer from liability from a greater hazard or

risk than it is clearly evident that he intended to assume; and as the case under consideration does show that the insurer had full knowledge of the conditions, and, with such knowledge, continued to carry the risks and receive the premiums for a series of years, to permit him now to evade his liability would be a perversion of justice, and this we cannot do. We have carefully examined the errors assigned by appellant's counsel, and the authorities cited in their support, and have reached the conclusion that judgment of the court below should be affirmed, with costs in favor of respondents, and it is so ordered.

Morgan, C. J., and Huston, J., concur.