461 P.2d 243

**Arvilla L. LEWIS, Plaintiff-Appellant,**

v.

**CONTINENTAL LIFE AND ACCIDENT CO., a corporation, Defend-ant-Respondent.**

No. 10229.

Supreme Court of Idaho.

Nov. 14, 1969.

Rehearing Denied Dec. 10, 1969.

Gee & Hargraves, Pocatello, for appellant.

Langroise, Clark & Sullivan, Boise, for appellee.

McQUADE, Justice.

The appellant, Arvilla L. Lewis, commenced this action against the defendant-respondent, Continental Life and Accident Co., on April 7, 1967. She claimed that $2,000 was owed to her, as the beneficiary of her husband Edward R. Lewis, under respondent's group policy number GE–223, issued to Bannock County, her husband's last employer. The insurance company denied liability. A variety of affidavits, exhibits, admissions and interrogatories were offered by both sides, and both parties moved for summary judgment. The district court found that Lewis had failed to make periodic proofs of disability which were found to be required by the "plain terms of the policy," and granted the insurance company's motion for summary judgment while denying that of the widow. The appellant appeals from that determination.

There is no substantial controversy over the circumstances which produced this litigation. Edward R. Lewis was an employee of Bannock County, Idaho, and, as such, he was covered from June, 1955 to November, 1961, by a group life insurance policy issued to Bannock County by the Aetna Insurance Company. Mr. Lewis suffered from emphysema, a chronic and debilitating lung condition, which became so severe that he had to take a leave of absence in 1958. The disease never relinquished its hold on him, and he remained unable to return to work until his death in August, 1966. According to an Aetna Insurance Company handbook Lewis remained covered even though not working, in the amount of $2,000, under this policy until 1961, when the county changed insurers to the defendant corporation.

In the late 1950's, the defendant Continental Insurance Company together with Blue Cross of Idaho approached the Bannock County Commissioners with a proposal to provide group insurance for its employees. The county commissioners were, however, hesitant to change insurers despite the fact that the Continental and Blue Cross offer was financially more attractive than the then current Aetna package. This hesitancy was inspired by a desire on the part of the commissioners not to deprive any employee of any benefits he was then enjoying under the Aetna policy. Continental's representatives, in order to sell their insurance to the county, agreed with the commissioners that there would be no loss of coverage and that all persons included in the Aetna program would be included equally in Continental's plan. The county commissioners *then* agreed to change insurers, and, in November, 1961, the defendant issued its group policy to Bannock County. The master copy of this policy was kept in the county clerk's vault. Continental also issued certificates of insurance to covered employees, including the appellant's husband, Edward R. Lewis. And Continental and Blue Cross jointly published and circulated a booklet entitled *"Bannock County Employees Benefit Program"* which purported to be an explanation of the entire insurance scheme in layman's terms. Mr. Lewis was also provided with one of these. This policy was in force at the time appellant's husband died.

The master policy, which was kept in the custody of the county clerk, is fourteen pages long, and it is for all practical purposes entirely printed. It contains a number of clauses which are not appropriate or necessary for this policy-holder or its employees. The certificate of insurance which the appellant's husband was given is also a fine printed form, six pages long. The explanatory booklet, on the other hand, is set out in large print on heavy paper and it is substantially easier to read than either of the first two documents. All three documents have provisions concerning continuation of insurance if the insured's employment is terminated because of total disability before the age of sixty.

Mr. Lewis, apparently under the assumption that he was covered under the

group insurance contract, paid monthly premiums to the county for "group insurance" coverage. On November 4, 1963, he made the last of these payments and, at that time, informed the Bannock County clerk that he would never be well enough to return to work. In February of 1964, Lewis became sixty years old and in August of 1966, he died. At the time of his death the Continental insurance policy was in force with the county. The contributions which Lewis paid to the county were included in the monthly premium paid to the company.

After her husband's death, the appellant claimed the life insurance benefit of $2,000. She was told by the respondent's representative that, if she provided the company with proof that Lewis had actually been disabled at the time of termination, the company would pay her claim. Continental was provided with certificates from three doctors and the Social Security disability award. The company has used this information to support its refusal to pay appellant the $2,000. The company asserts the policy provides that only employees in 1961 or since "actively at work" for the county were covered by the policy. The company contends that if Lewis was initially covered by the policy, that such coverage was not continued because he failed to provide yearly proof of total disability (the actual fact of which is not disputed) as is said to be required by the master policy.

There are two issues for the Court to resolve. The first is a determination of what the legal effect of the contract between Continental and the county actually was. More specifically, we must decide whether the contract of insurance related to all employees previously covered under the Aetna program according to the negotiated agreement between the insurance company and the county commissioners, or whether, as provided in the printed form master

policy, only those employees "actively at work" could claim the death benefits under the Continental-Blue Cross insurance policy. Because we hold that Continental was bound to honor its agreement to cover all employees covered by Aetna, including Lewis, we must then decide the second issue of whether the failure of the appellant's husband to make yearly proof of his disability deprived her of her rights to $2,000 as beneficiary under the contract. We hold, for the reasons hereinafter set out, that the defendant-respondent, Continental Life and Accident Company, is estopped to raise either of these objections to recovery by the appellant.

The respondent argues that, regardless of what arrangements may have been worked out between the county and itself prior to its issuing the group policy, the "plain words" of the printed form master policy must control. It is argued that we must hold that once this written policy was issued, it, according to the traditional precepts of the parole evidence rule, represented the entire, "integrated" contract between the two parties. With these contentions we cannot agree. It is, of course, true that insurance companies may limit their liability. But this must be done by *contract,* and we have long recognized that "it is a matter of common knowledge insurance contracts are not entered into as other contracts generally are."[1] As Justice William Howard Taft noted seventy-six years ago:

"Policies are drawn by the legal advisers of the company, who study with care the decisions of the courts, and, with those in mind, attempt to limit as narrowly as possible the scope of the insurance. It is only a fair rule, therefore, which courts have adopted, to resolve any doubt or ambiguity in favor of the insured and against the insurer."[2]

1. Rauert v. Loyal Protective Ins. Co., 61 Idaho 677, 685, 106 P.2d 1015, 1018, (1940).

2. Manufacturers' Accident Indemnity Co. v. Dorgan, 58 F. 945, at 956, 22 L.R.A. 620 (6th Cir. 1893) ; *accord,* Charlton v. Wakimoto, 70 Idaho 276, 283, 216 P.2d 370, 374 (1950).

We have, on a number of occasions,[3] cited and quoted with approval the words of the Supreme Court of Utah in the case of Browning v. Equitable Life Assurance Society,

> "Insurance policies, while in the nature of written contracts, are not prepared after negotiations between the parties, to embrace the terms at which the parties have arrived in their negotiations. They are prepared beforehand by the insurer, and the company solicitors then sell the insurance idea to the applicant. Normally, the details and provisions of the policy are not discussed, except that the particular form of policy is best suited to give the applicant the protection he seeks. If he reads the policy he is generally not in a position to understand its details, terms, and meaning except that, in the event against which he seeks insurance, the company will pay the stipulated sums. He seldom sees the policy until it has been issued and is delivered to him. He signs an application blank in which the policy sought is described either by form number or by a general designation, pays his premium, and in due course thereafter receives, either from the agent or through the mails, his policy.

> Many of its terms and all of its defenses and super-refinements he has never heard of and would not understand them if he read them." [4]

This Court, recognizing the character of the written insurance "contract," has long held, where a policy holder is induced to enter into contract in reasonable reliance on promises of or agreements with the soliciting representative of that insurance company thereby leaving the insured person or property otherwise unprotected, and the company profits from that change of position, that the insurance company is estopped to deny the liability for which it actually contracted by raising provisions from its own printed policy form.[5]

In Mull v. United States Fidelity & Guaranty Co.,[6] it was, thus, held that an insurance company which had promised to protect a building contractor under a new workmen's compensation law and which had collected a premium from him had to indemnify him for a claim arising under that law even though the policy contained an express denial of coverage under any "no fault" compensation scheme. In Collard v. Universal Automobile Insurance Company [7] a provision in an auto accident

3. *E. g.*, Rauert v. Loyal Protective Ins. Co., *supra* n. 1; Shields v. Hiram C. Gardner, Inc., 92 Idaho 423, 444 P.2d 38 (1968); O'Neil v. New York Life Ins. Co., 65 Idaho 722, 152 P.2d 707 (1944); Rollefson v. Lutheran Brotherhood, 64 Idaho 331, 132 P.2d 758 (1942).

4. 94 Utah 532, 561–562, 72 P.2d 1060, 1073 (1937).

5. *E. g.*, Mabee v. Continental Casualty Co., 37 Idaho 667, 219 P. 598, 37 A.L.R. 348 (1923); Leaf v. Reynolds, 34 Idaho 643, 203 P. 458 (1921); Allen v. Phoenix Assurance Co., 14 Idaho 728, 95 P. 829 (1908); Bellevue Roller Mill Co. v. London & Lancashire Fire Insurance Co., 4 Idaho 307, 39 P. 196 (1895).

6. 35 Idaho 393, 206 P. 1048 (1922). *Mull* is a difficult case to interpret because there are two "opinions of the court" which both hold the insurance company estopped. It should be noted

that the stronger, from appellant's point of view, opinion by Budge, J. cites authorities which are cited with approval in other Idaho cases. *See*, e. g. Mabee v. Continental Casualty Co., *supra* n. 5, at 37 Idaho 680, 219 P. 598; and Carroll v. Hartford Fire Ins. Co., 28 Idaho 466, 480, 154 P. 985, 989 (1916).

7. 55 Idaho 560, 45 P.2d 288 (1935). This case and the *Huppert* case, cited at n. 8, below, in part turn on the fact that foreign insurance companies were involved. Respondent in this case is an Idaho corporation, but the articulated considerations supporting the holdings in *Collard* and *Huppert*, *i. e.*, the remoteness of the corporate insurance company from the actual negotiations and the quality of reliance which an insured must place on the representations of an insurance agent, apply equally as well to the facts in this case. *See also* Shields v. Hiram C. Gardner, *supra* n. 3.

policy which expressly stated that the contract was void if ownership changed was held to have been waived by the gratuitous declaration of the company's agent, and the company was held liable when the new owner of the car was involved in an accident while on a trip which he took in reliance on the agent's statements. These holdings have recently been reaffirmed in Huppert v. Wolford.[8] In that case a representative of an insurance company promised a truck driver that he would become insured for an indeterminate period from the time that he signed an application. The printed application form, however, expressly limited the binder period to fifteen days. The promise made by the company's representative was held to have estopped the company from barring recovery from it for damages arising out of an accident which had involved the insured truck and which had occurred more than fifteen days after the application had been signed. *Huppert*, on its facts, is a much stronger case from the insurance company's standpoint than is this one. In that case the provision which the company sought to raise in defense was on a form actually signed by the insured contemporaneously with the parole promise of the insurance agent. In this case Continental is attempting to impose a provision in a printed form which was simply delivered to the county after an agreement had been reached, and which was at variance with that prior agreement.

We believe that the principles which control the above cited cases should also control in this one. Here the defendant insurance company promised Bannock County it would cover *all* of its employees who had been covered under the Aetna plan. In reliance on that promise the county changed its insurer. Lewis also relied on that assurance and made no other provisions. While Lewis was not a policy holder, he, as the insured, was in precisely that class of persons who would suffer

from the limitation which Continental unilaterally sought to impose on its promise to the policy holder. And it is precisely appellant's difficulty which the county sought to avoid by exacting the promise to cover all employees who had been formerally covered before it agreed to contract with Continental. Because of the county's reliance on its promise, the company has benefited through being able to collect premiums from the county which, for two years, included Lewis' contribution. All of the elements of estoppel are present. A promise, reliance, detriment to the insured person, and consequential profit to the company. We must, therefore, hold that Edward R. Lewis was, from the beginning of the Continental-Blue Cross program insured under the group policy GE-223, and that the requirements that an employee must be "actively at work" in order to be eligible for coverage by Continental can not have application in this case.

Our holding is buttressed by the recent decision of the Supreme Court of South Carolina in the case of Spencer v. Republic National Life Insurance Company.[9] The facts in that case are literally exactly in point with this one insofar as the question of initial coverage is concerned. In that case, a county changed group insurers to avail itself of a lower premium rate, but only after the new insurer promised to cover all employees then covered under the county's old plan. The insurers were changed on February 1, 1961. The deceased employee in that case entered the hospital on January 14, 1961, and died on February 2, 1961. The policy, like the Continental policy in this case, included a standard "actively at work" provision which the company attempted to use as a bar to the decedent's beneficiary's recovery. The Supreme Court of South Carolina said, in holding that the insurance company could not impose such a condition,

"Under the undisputed evidence, *the appellant was clearly estopped from relying*

8.  91 Idaho 249, 420 P.2d 11 (1966).

9.  243 S.C. 317, 133 S.E.2d 826 (1963).

upon the 'actively at work' clause contained in both the application and the subsequently delivered policy. The proposal submitted by Thornton [the insurance company's representative] to Florence County was approved by the appellant and there is no question before us as to the authority of Thornton in the premises. Thornton, in good faith, represented to the county that all employees would be immediately covered from the date of the issuance of the policy, which representation was, in good faith, acted upon by Florence County to the detriment of its employees, Mrs. Spencer in particular, when in reliance upon the representations, the coverage in existence was allowed to expire, on the assurance that the new coverage would fully and immediately replace it." (Emphasis supplied).[10] The reasoning of the Supreme Court of South Carolina in the *Spencer* case is correct, and, we agree with it.

■ The respondent argues, however, that to hold as we do would be to write a new contract and impose a liability on the company for which it had not bargained. Continental's argument, which was also made in the *Spencer* case, is without merit. The purpose of the doctrine of estoppel in insurance cases is to enforce the contract as originally agreed upon by the parties.[11] We are not writing a new contract. We are only refusing to allow the insurance company to replace the original bilateral agreement with its own unilaterally drafted insurance form.

Because we have determined that the appellant's husband was initially covered under the actual contract of insurance between Continental and the county, we must next discuss the issue of whether his fail-

ure to give yearly proofs of his total and permanent disability will block his recovery. It should first be noted that the fact that Edward Lewis was unable to work because of his emphysema is not controverted by the insurance company. The respondent is not, therefore, in this case, threatened with being defrauded of its $2,000 death benefit by a man who is not actually disabled.[12]

On the ninth page of the master policy issued by the respondent to Bannock County the company sets out requirements which must be met before it will extend life insurance coverage to a disabled employee without premium payments. This is in the middle of a fourteen page printed form containing a number of clauses which are either inappropriate in the context of Bannock County's employment situation or which just do not apply. In pertinent part the provisions on page 9 read:

"(b) *Total and Permanent Disability*—If an employee while insured under the policy and prior to his sixtieth birthday becomes totally and permanently disabled * * * and if due proof of such disability is submitted before the cessation of premium payments for his insurance or within twelve months thereafter, the Insurance Company will extend the insurance on such employee without payment of premiums, during the continuance of such total and permanent disability, for a period of one year from the date or receipt of such proof, and for further successive periods of one year each during the continuance of total and permanent disability, provided due proof of such continuance is submitted within the period of three months immediately preceding each date to which the insurance has been extended.

10. 133 S.E.2d, at 829.

11. *See* Carroll v. Hartford Fire Ins. Co., *supra*, n. 6; Allen v. Phoenix Assurance Co., *supra* n. 5.

12. In the *Bellevue Roller Mill* case, *supra* n. 5, 4 Idaho, at 319–320, 39 P. 196

there is language to the effect that provisions designed solely to protect the insurer from a risk greater than that for which it bargained will not bar recovery on a risk which it actually agreed to cover if there is only technical breach of those provisions.

"(c) Proof of disability and of the continuance thereof, as herein required, must be furnished to the Insurance Company on the initiative of the disabled employee or by someone on the employee's behalf; and the Insurance Company shall not be required to request such proof.

\* \* \* \* \* \*

"(f) No payment shall be made under this section on account of the death of an employee unless written notice of the death of the employee and proof of the continuance of total disability to the date of death is received by the Insurance Company at its Home Office within twelve months after the date of such death."

This last paragraph seems to state a less rigorous requirement for proof of disability than do the first two. Because of this apparent conflict it would be possible to interpret paragraphs (b) and (c) as not actually being conditions precedent to the company's liability. In any event, the requirements for death benefit extension are not "clear" or "wholly unambiguous" as the respondent would have us hold.

The handbook put out by Continental and Blue Cross both to explain the group insurance package and to induce employees to subscribe to it is, on the other hand, quite clear on the question of extension:

"If your employment is terminated because of total disability before you reach age sixty, your group life insurance will be continued without any cost to you during such disability. You will be required to submit evidence of your continued disability from time to time."

This statement seems to be at odds with the (b) and (c) paragraphs of the master policy and in harmony with a more lenient requirement of paragraph (f) of the policy. After Lewis' death, appellant was informed by respondent's agent that all she needed to do was offer adequate proof of her husband's total disability (which she did) and the company would remit to her the $2,000 death benefit as Lewis' beneficiary.

■■ It is elementary that proof of disability and proof of loss provisions in an insurance policy are provided by the insurer for its own benefit and, thus, may readily be waived by the company.[13] And a waiver may be effected by conduct as well as by agreement.[14]

■ In this instance the combination of words and conduct which effectively waived the rigorous requirements of the (b) and (c) paragraphs of the master policy was the composition and distribution of the explanatory handbook. This handbook explained coverage under the program in clear, informal and easily read English. It was expected that employees would read and rely upon this booklet. And the company did or at least should have known that if an employee wished to determine what his coverage was he would turn to this pamphlet before the hard to decipher certificate of insurance or the master policy. The requirement for premium-free death benefit extension, as stated in the handbook, is simply a readiness to supply Continental with evidence of disability "from time to time." Under these conditions it would be inequitable for the respondent to have sold insurance based on a statement of this simple, less onerous duty and then to enforce a stricter provision later on. We hold, therefore, that respondent waived the provisions which were directly contrary to its

13. *See, e. g.,* March v. Snake River Mutual Fire Insurance Co., 89 Idaho 275, 284–285, 404 P.2d 614, 620 (1965); McKune v. Continental Casualty Co., 28 Idaho 22 (On Rehearing, at 31), 154 P. 990 (1915); Alliance Ins. Co. v. Enders, 293 F. 485, 488 (9th Cir. 1923); *cf.* Kingsford v. Business Men's Assur. Co., 57 Idaho 727, 68 P.2d 58 (1937).

14. Allen v. Phoenix Assurance Co., *supra* n. 5, 14 Idaho 728, at 746–747, 95 P. 829 at 835.

representations in the pamphlet and the agreement with the county commissioners.

Respondent contends, finally, that we cannot hold that there is a waiver in this instance because the fourth paragraph of the fourteenth page of the master policy stipulates that:

"Only the president, a vice-president, the secretary or an assistant secretary of the Insurance Company has power to change, modify or waive the provisions of this policy, and then only in writing. The Insurance Company shall not be bound by any promise or representation heretofore or hereafter made by or to any agent or person other than as above."

These "no-waiver" clauses have been before this Court before.[15] It is, of course, obvious that these provisions, written by the company for its own benefit may be waived by it. Such a waiver may be effected by qualified officials of the company or by conduct attributable to the company.[16] And, of course "waiver" in insurance cases is very closely akin to estoppel; in some instances the two words are used interchangeably. And the equitable device of estoppel may not be thwarted by a provision in a policy drafted by the party to be estopped.[17]

We must, for the reasons set out above, reverse the lower court's award of summary judgment in favor of defendant-respondent, Continental Life and Accident Company. And, because there is no controverted question of fact, we grant the motion for summary judgment of the plaintiff-appellant, Arvilla L. Lewis.

Appellant has duly filed a motion for allowance of attorneys' fees on appeal pursuant to I.C. § 41–1839. Appellant is hereby allowed the sum of $750 attorneys' fees, such sum to be added to the judgment of $2,000 on the insurance contract.

Judgment reversed, costs to appellant.

McFADDEN, C. J., DONALDSON, SHEPARD, JJ., and SCOGGIN, D. J., concur.

15. Sweaney & Smith Co. v. St. Paul Fire & Marine Ins. Co., 35 Idaho 303, 314, 206 P. 178, 182 (1922) ; Collard v. Universal Automobile Insurance Co., *supra* n. 7; Farmers' and Merchants' Bank v. Hartford Fire Ins. Co., 43 Idaho 222, 230, 253 P. 379, 382 (1926).

16. *See* cases *supra* n. 15; Allen v. Phoenix Assurance Co., *supra* n. 5, 14 Idaho at 746–747, 95 P. 829 at 835.

17. Omaha Woodmen Life Insurance Society v. Krussman, 131 F.2d 83, 84 (9th Cir. 1942).