THE J. I. KELLY COMPANY, A CORPORATION, *Plaintiff in Error,* v. SAINT PAUL FIRE AND MARINE INSURANCE COMPANY, A CORPORATION, *Defendant in Error.*

FIRE INSURANCE — FORFEITURE CLAUSE ON COMMENCEMENT OF FORE-
CLOSURE PROCEEDINGS.

The following clause in polices of fire insurance: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto; shall be void if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed," *Held,* to be a wise and proper safeguard to the insurer against the greatly increased risk consequent upon the circumstances provided against therein. And that where an insured mortgagor endeavored to make arrangements to postpone the institution of proceedings to foreclose the mortgage upon the insured property and was notified of the commencement of the foreclosure proceedings the day they were commenced, a failure to procure from the insurer an agreement to be endorsed on or added to the policy of insurance giving the consent of the insurer to a continuation of the risk notwithstanding the foreclosure proceedings, renders the policy void as provided therein, in the absence of a waiver.

This case was decided by the Court En Banc.

Writ of Error to the Circuit Court for Walton county.

*Statement.*

The plaintiff in error, hereinafter referred to as the

plaintiff, sued the defendant in error as defendant below in the Circuit Court of Walton County upon a fire insurance policy, the declaration being as follows:

"Now comes The J. I. Kelley Company, a corporation, incorporated and doing business under the laws of Florida, said plaintiff, and sues said defendant in the above entitled cause;

For that in consideration of $75.30 to it paid and payment thereof acknowledged, the said defendant issued to said plaintiff its policy of insurance and thereby promised the plaintiff in the terms of said policy and upon the conditions thereto annexed, to insure the said plaintiff against all loss, or damage, by fire to the amount of $1500.00, and to make good unto said plaintiff all loss, or damage, that should happen by fire, not exceeding the sum of $1500.00 for the term of one year from the 31st day of January, A. D. 1906, to the 31st day of January, A. D. 1907, on that certain property used in and connected with their saw mill plant at Whitfield, County of Walton, State of Florida, a more particular description of which will appear by reference to the original policy and the schedules thereto attached, which by reference thereto is made a part hereof for every necessary and legitimate purpose and to have the same force and effect as if the same were copied herein, the loss by the terms of said policy to be paid in 60 days after due notice and proof made by the plaintiff and received by said defendants, and in the said policy sundry provisions, conditions, prohibitions and stipulations were and are contained, and thereto annexed as by the original policy filed herewith, marked Exhibit 'A,' and made a part of this declaration for every necessary and legitimate purpose and with like force and effect as though the same were copied herein, will more fully appear; that afterwards, to-wit, on the morning of the 4 day of August, A.

D. 1906, that part of said property as is particularly described on Exhibit 'B' attached hereto and made a part hereof for every necessary and legitimate purpose, was burned and destroyed by fire, and damage and loss was thereby occasioned to said plaintiff to the amount of $33,263.20 in such circumstances and conditions as to come within the promise and undertaking of said policy and to render liable and oblige the said defendant to insure said plaintiff to the amount of $1500.00 on the property aforesaid, of which loss the defendant has had due notice, on, to-wit,     day of     , A. D. 1906, and although all conditions have been performed and fulfilled and all events and things existed and happened and all periods of time have elapsed to entitle the plaintiff to a performance by the defendant of said contract, and to entitle the plaintiff to said sum of $1500.00, and nothing has occurred to prevent the plaintiff from maintaining this action against said defendant, yet said defendant, though often requested so to do, has not paid, or made good to said plaintiff, the said amount of the loss and damages aforesaid, or any part thereof, but has refused and still refuses so to do to the damage of said plaintiff in the sum of $1900.00.

Wherefore, and because of the premises, the said plaintiff claims the sum of $1500.00 damages for the insurable value of said property so destroyed by fire as aforesaid; that by reason of the failure of said defendant to perform its promises and obligations aforesaid, it has become necessary for said plaintiff to bring this its suit against said defendant and necessary for said purpose to employ an attorney, which it has done, and, therefore, claims the further sum of $     as reasonable attorney's fees in this behalf incurred."

The policy sued upon was also exhibited as a part of

the declaration. To this declaration the defendant filed the following pleas:

"The defendant for pleas to the declaration says:

1. That in and by the contract of insurance mentioned in and made a part of the declaration, it was provided that if with the knowledge of the insured foreclosure proceedings should be commenced upon any property covered by the said policy, by virtue of any mortgage or trust deed, the said entire policy, unless otherwise provided by a written agreement endorsed thereon or added thereto, should be void; that prior to said alleged loss by fire, there was begun a suit in chancery in the Circuit Court of Walton County, Florida, a court having jurisdiction of the said suit, to foreclose a then valid and subsisting and unpaid mortgage theretofore made by the Jernigan Lumber Company, a corporation, from which the plaintiff derived title to the said property insured; that in the said suit, the said Jernigan Lumber Company and the plaintiff were made parties defendant; that due and legal service of process of subpoena was made in the said suit upon plaintiff before the said alleged fire and that the said foreclosure proceedings were with the knowledge of the plaintiff and were instituted, had and continued without any written agreement of the defendant endorsed on the said policy or added thereto;

2. That in and by the contract of insurance mentioned in and made a part of the declaration, it was provided as follows, to-wit: 'This entire policy shall be void, if the insured has concealed or misrepresented in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof;' and that the plaintiff did, at and before the making of said policy and the contract contained therein, concealed from the defendant a material fact concerning the said insur-

ance and the subject thereof, to-wit: The fact that the property so insured was at the time of the making of the said contract, and had been for a long time prior thereto, encumbered by a valid and subsisting mortgage securing the sum of Twenty-five Hundred ($2500.00) Dollars made to one Francis Matthews by the said Jernigan Lumber Company, from which plaintiff derived title to the said property."

To these pleas the plaintiff interposed the following demurrer and amendments thereto:

"Now comes said plaintiff and demurs to plea numbered one of said defendant and for cause of demurrer, says:

I. Said plea sets forth no defense to plaintiff's action.

II. It is not alleged by said plea that plaintiff has violated any representations which were made to said defendant at the time defendant contracted to insure said plaintiff in such a manner as to avoid the payment of the policy sued upon.

III. It is not alleged by said plea that the mortgage upon which foreclosure proceedings were had was a mortgage executed by said plaintiff.

And for demurrer to plea numbered two plaintiff says:

I. Said plea sets forth no defense to plaintiff's action.

II. It is not alleged by said plea that plaintiff has violated any representations which were made to said defendant at the time defendant contracted to insure said plaintiff in such a manner as to avoid the payment of the policy sued upon.

III. It is not alleged by said plea that the defendant did not know that said mortgage was subsisting upon said property at the time of the issuance of the policy.

IV. It is not alleged by said plea that said plaintiff

executed said mortgage, or that said plaintiff was legally bound to pay the same."

Amendments to demurrer:

"Now comes said plaintiff, by leave of the court first had and obtained, and amends its demurrer herein by adding the following additional grounds and causes of demurrer, to-wit:

As to plea number one:

I. It is not alleged that the defendant at the time of issuing the policy, or at any time subsequent thereto and prior to the loss advised, or notified, the plaintiff that the institution of foreclosure proceedings would vitiate the policy.

II. It is not alleged that the plaintiff knew prior to the loss sustained by fire that the beginning, or institution, of foreclosure proceedings would in any manner affect its insurance, or vitiate the policy.

III. It is not alleged that defendant solicited, or asked, any information of plaintiff relative to any mortgage, or trust deed, existing at the time of the issuance of the policy, or at any time subsequent thereto, before the accrual of the plaintiff's cause of action.

Amended demurrer as to plea number two:

I. It is not alleged that the alleged concealment by the plaintiff of the mortgage was intentional, nor that the alleged concealment consisted of the wrongful suppression of any material fact; nor that the fact alleged to have been concealed was thought to be of any importance by the plaintiff.

II. It is not alleged that the plaintiff knew prior to the loss sustained by fire that the existence of the mortgage, or trust deed, was a fact material to its insurance, or that the same would in any manner affect its insurance, or vitiate the policy.

III. It is not alleged that the defendant solicited, or

asked, any information of the plaintiff relative to any mortgage, or trust deed, existing at the time of the issuance of the policy, or at any time subsequent thereto before the accrual of the plaintiff's cause of action.

IV.    The averments that the plaintiff concealed the existence of the alleged mortgage are vague, indefinite and insufficient.

V.    Said plea alleges a mere legal conclusion."

The defendant withdrew its first plea above and substituted the following plea in its stead:

"The defendant, withdrawing the first plea to the declaration, substituting therefor the following, to-wit:

I.    That in and by the policy of insurance mentioned in and made a part of the declaration, it was provided that the said policy, unless otherwise provided by agreement endorsed thereon or added thereto, should be void, if, with the consent of the insured, (the plaintiff), foreclosure proceedings should be commenced or notice given of the sale of any property covered by the said policy by virtue of any mortgage or trust deed; that on the 24th day of July, A. D. 1906, there was commenced a suit in chancery in the Circuit Court of Walton County, Florida, a court having jurisdiction of said suit, to foreclose a then valid and subsisting mortgage upon the property insured by said policy, theretofore made to one Frances Matthews by the Jernigan Lumber Company, a corporation, from which plaintiff derived title to the said property insured, the said mortgage securing a then valid, subsisting and unpaid indebtedness; that in the said suit, the said Jernigan Lumber Company and the plaintiff were made parties; that on the same day subpoenas in due form and of due effect issued to the defendants; and that on the same day due and legal service of said subpoenas were made upon each of the said defendants, and that thereby the plaintiff then and thereby acquired

knowledge of the said foreclosure proceedings, and that no written agreement of the defendant herein to the commencement of the said proceedings has ever been endorsed upon the said policy or added thereto."

The demurrer of the plaintiff to the original first plea of the defendant was left standing and applied to this substituted plea. Upon argument the court overruled the demurrer to the defendant's substituted first plea, but sustained the demurrer to the defendant's second plea. Thereupon the plaintiff by leave of the court filed the following additional count as an amendment to its declaration:

"Now comes The J. I. Kelley Company, a corporation, incorporated and doing business under the laws of Florida, as plaintiff, and after leave of the court first had and obtained, files herein the following additional count:

1. That on the night of the 4 day of December, A. D. 1906, part of the property covered by that certain policy of insurance issued to said plaintiff by said defendant, a copy of which policy of insurance is attached to the original declaration herein filed, marked Exhibit 'A' and is by reference thereto prayed to be made a part hereof for every necessary and legitimate purpose and with like force and effect as though it were copied herein, or attached hereto, was destroyed by fire on the 4 day of December, A. D. 1906, as is particularly described by Exhibit 'C' attached hereto and prayed to be made a part hereof, and damage and loss was thereby occasioned to said plaintiff to the amount of $2371.03, in such circumstances and condition as to come within the force and undertaking of said policy of insurance and to render liable and oblige and obligate the said defendant to insure said plaintiff to the amount of $167.76 on the property aforesaid, of which loss the defendant has had due notice, to-wit: on and before the 2 day of Febru-

ary, A. D. 1907, and although all conditions have been performed and fulfilled and all events and things existed and happened and all periods of time have elapsed to entitle the plaintiff to a performance by the defendant of said contract and to entitle the plaintiff to said sum of $167.76 and nothing has occurred to prevent the plaintiff from maintaining this action against said defendant, yet said defendant, though often requested so to do has not paid, or made good, to said plaintiff the said amount of loss and damage aforesaid, or any part thereof, but has refused and still refuses so to do to the damage of said plaintiff in the further sum of $167.76.

And plaintiff by leave of the court first had and obtained, amends further its original declaration herein by increasing the *ad damnum* clause from $1900.00 to $1,-950.00."

To this amendment to the declaration the defendant filed the following plea:

"The defendant for plea to the second count of the declaration filed by way of amendment, says:

1. That in and by the policy of insurance mentioned in and made a part of the declaration, it was provided that the said policy, unless otherwise provided by agreement endorsed thereon or added thereto, should be void, if, with the consent of the insured (the plaintiff) foreclosure proceedings should be commenced or notice given of the sale of any property covered by the said policy by virtue of any mortgage or trust deed; that in the 26th day of July A. D. 1906, there was commenced a suit in chancery in the Circuit Court of Walton County, Florida, a court having jurisdiction of said suit, to foreclose a then valid and existing mortgage upon the property insured by said policy, theretofore made to one Frances Matthews by the Jernigan Lumber Company, a corporation, from which plaintiff derived title to the said prop-

VOL. 56, JUNE TERM, 1908.        465

J. I. Kelly Co. v. St. Paul F. and M. Ins. Co.—Statement of Case.

erty insured, the said mortgage securing a then valid, subsisting and unpaid indebtedness; that in the said suit, the said Jernigan Lumber Company and the plaintiff were made parties; that on the same day subpoenas in due form and of due effect issued to the defendants; and, that on the said day, due and legal service of said subpoenas was made upon each of the said defendants, and that thereby the plaintiff then and thereby acquired knowledge of the foreclosure proceedings and that no written agreement of the defendant herein to the commencement of the said proceedings has ever been endorsed upon the said policy or added thereto."

The plaintiff filed the following replications to the first plea of the defendant as amended:

"And the said plaintiff for replication to defendant's plea Number one as amended, says:

I.  Plaintiff admits that the said policy of insurance contains among divers other conditions the condition, to-wit:  'This entire policy, unless otherwise provided by agreement endorsed hereon, or attached hereto, shall be void if with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of sale of any property covered by this policy by virtue of any mortgage, or trust deed,' but plaintiff alleges that said foreclosure proceedings were not commenced either with its knowledge, or consent, but in truth and in fact the filing of the bill of complaint and the issuance of the subpoena thereon on the 24 day of July, A. D. 1906, was without either the knowledge or the consent of said plaintiff; that said plaintiff had no knowledge of the filing of the bill of complaint, nor of the issuance of the subpoenas in consequence thereof until the subpoena was served upon it, on the 24 day of July, A. D. 1906; that said bill of complaint was filed on that certain mortgage executed on the 10 day of January, A. D. 1905,

by the Jernigan Lumber Co., a corporation, for the·face
value of $2500.00 payable to the order of one Frances
Matthews; that the consideration of $2500.00 as stated
in said mortgage was not paid, but only the sum of $2,000
thereof was paid to said Jernigan Lumber Co., as mort-
gagor thereof; that at the time of filing said bill of com-
plaint to foreclose said mortgage on the 24 day of
July, A. D. 1906, and at the time of the issuance of the
subpoena thereon and at the time of the service of said
subpoena upon the plaintiff on the 24 day of July, A.
D. 1906, the balance due upon said mortgage was the
sum of $2000.00 as principal and the sum of $300.00 as
interest, making the aggregate sum of $2300.00; that
said mortgage was duly recorded in the public records
of real mortgages, volume 6, page 17, on the 30 day
of January, A. D. 1905, in the office of the clerk of the
Circuit Court of the County of Walton, State of Florida,
and was also duly recorded in the public records of real
mortgages, volume 6, pages 187, 188 and 189, on the
10 day of February, A. D. 1905, in the office of the
clerk of the Circuit Court, County of Washington, State
of Florida, which mortgage and the endorsements there-
on, is attached hereto marked Exhibit 'D,' and prayed to
be made a part hereof for every necessary and legitimate
purpose; that the note to secure the payment of which
said mortgage was given was made payable to the owner
of the said Frances Matthews November 1, A. D. 1905;
that at the time of the issuance of the said policy of in-
surance said mortgage was executed was then a valid
and subsisting lien upon the subject of said insurance and
was duly filed and recorded in the proper records of the
counties aforesaid; and was past due and payable; that
the value of the real estate covered by said mortgage
was in excess of $20,000.00; that the other property cov-
ered by said mortgage and papers given to further secure

the payment of said promissory note was in excess of $3000.00, making the aggregate sum of the property encumbered to secure the payment of said promissory note to be the sum of $23,000.00; that in order to further secure the payment of said promissory note and mortgage, and in order that the time for the payment thereof might be extended until the 25 day of April, A. D. 1906, said plaintiff executed on the 25 day of January, A. D. 1906, and delivered unto said Frances Matthews its certain mortgage upon certain cypress lumber of the aggregate value of $1537.59, which mortgage was duly recorded in the public record of chattel mortgages, volume 9, page 256, on the 26th day of June, A. D. 1906, in the office of the clerk of the Circuit Court of Walton County, State of Florida, which mortgage, with the endorsements thereupon, is attached hereto marked Exhibit 'E' and prayed to be made a part hereof; that in order to further secure the payment of said promissory note and in order that the time of payment thereof might be further extended until the 15 day of July, A. D. 1906, said plaintiff on the 16 day of June, A. D. 1906, executed another of its mortgages upon certain cypress lumber aggregating in value the sum of $2034.38; that said mortgage was duly recorded in the public records of chattel mortgages, volume 9, page 255 on the 26th day of June, A. D. 1906, in the office of the clerk of the circuit court, Walton county, Florida, a copy of which mortgage is attached hereto marked Exhibit 'F' and prayed to be made a part hereof; that upon the date, to-wit, the 24 day of July, A. D. 1906, upon which said bill of complaint was filed and upon which the subpoena in chancery was issued thereon and upon which date service of said subpoena was made upon said plaintiff, said Frances Matthews by her duly authorized agent, A. J. Matthews, requested payment of the balance due

on said promissory note to secure the payment of which the said mortgages were executed; that at the time of requesting payment of said plaintiff, said A. J. Matthews did not advise said plaintiff that he was about to, or going to, file said bill of complaint, or institute said foreclosure proceedings; that he on said date advised George W. Ward, President of plaintiff corporation, that if it would pay him the sum of $1000.00 upon his return from the City of Boston, State of Massachusetts, he, said George W. Ward, then and there expecting to leave for the said City of Boston, State of Massachusetts, he, said A. J. Matthews would further extend the time for the payment of said note and the balance due thereupon until the 1 day of January, A. D. 1907, and he, said A. J. Matthews, acting as the duly authorized agent of the said Frances Matthews, then and there further stated to said George W. Ward, said plaintiff, that he, said A. J. Matthews, would in consideration of his promise to pay upon said mortgage indebtedness the sum of $1000.00 upon his return from the said city of Boston, State of Massachusetts, he would extend the time of payment until the 1 day of September, A. D. 1906; that because of the agreement aforesaid, between said plaintiff and said A. J. Matthews, plaintiff had no reason to expect and did not expect that said A. J. Matthews would file any bill to foreclose said mortgage; that said agreement was made between said A. J. Matthews and said George W. Ward, then and there acting as the duly authorized agent of said plaintiff, between seven and eight o'clock on the 24 day of July, A. D. 1906; that service of subpoena issued upon and in consequence of the filing of the bill of complaint to foreclose said mortgage was not made upon said George W. Ward, said plaintiff, until after the making of said agreement and not until about 9 P. M. on said date, to-wit, July 24, A. D. 1906;

that said plaintiff was then and there arranging to leave for the City of Boston, State of Massachusetts, to make final settlement in connection with a large shipment of cypress and said plaintiff did leave for the said City of Boston at, or about 9:15 P. M. on said date; that at the time of service of said subpoena said George W. Ward, said plaintiff, was in the presence of the said A. J. Matthews when he, said A. J. Matthews, then and there stated in substance to said plaintiff, 'I did not intend that, and I will pay all of the costs and dismiss the suit if you (George W. Ward) will pay, as we have agreed upon, the sum of $1000.00 when you return from Boston; that he did not think his attorneys would file suit as soon as they did and that he would give plaintiff until the first day of September to pay the $1000.00;' that because of said statements and agreements by said A. J. Matthews, George W. Ward had reason to believe and did believe that the filing of said bill of complaint was the result of a misunderstanding between complainant and the counsel of the said complainant foreclosing and because said complainant had on divers times extended the time for the payment of said note in consideration of which plaintiff had executed the several mortgages hereinbefore mentioned and because of the said statements and agreements of said A. J. Matthews, then and there acting as the duly authorized agent of the said mortgagee, to extend the time of payment until the first day of September, A. D. 1906, upon plaintiff's promise to pay to said mortgagee the sum of $1000.00 and his statement that the filing of the bill of complaint was not by him, nor said complainant, intended that he would pay all costs and dismiss said suit and extend the time of payment, as aforesaid, plaintiff had reason to believe and did believe that said bill of complaint and proceedings had and done because of the filing thereof was not only the result

of a misunderstanding between said complainant and said complainant's counsel, but also, that said bill of complaint and the proceedings had and done thereon in consequence of the filing thereof would, in accordance with said agreement be promptly dismissed; that if said George W. Ward, as the President of plaintiff corporation, had not so believed, or if he, said George W. Ward, then and there acting as the President of plaintiff corporation had believed, or had any reason to believe, that said bill of complaint would have been filed, he would have arranged for the payment of said mortgage in order that attorneys' fees and other costs to be incurred by the institution of foreclosure proceedings might have been avoided; that plaintiff did on or about 9:15 P. M., or within a few minutes after the service of the subpoena aforesaid, on the 24th day of July, A. D. 1906, leave on the eastbound train for the said City of Boston, where he remained and whence he did not return until about the 10 day of September, A. D. 1906; that at the time of the issuance of said policy of insurance unto said plaintiff by said defendant no written application was made for said insurance, no representation whatever was made concerning any mortgage indebtedness against the property covered by said insurance; no questions were asked by said defendant to said plaintiff, either at the time, or before the issuance of said policy of insurance concerning any mortgage indebtedness whatever, except certain mortgage indebtedness of about $8000.00 then existing and due and payable to the Walton Land & Timber Co., a corporation, and that as to such indebtedness defendant not only knew, but also endorsed on said policy of insurance the customary loss payable clause, making the loss if any payable to the said Walton Land & Timber Co., as their interest might appear; that said policy of insurance was executed by Anderson & Dorr of Pensa-

cola, Fla., the regular and duly authorized agent of said defendant unto said plaintiff upon the bare application of said plaintiff for insurance upon the property covered by said policy; that subsequent to said application said Anderson & Dorr, the regular and duly authorized agent aforesaid, of said defendant, issued said policy upon a general form of insurance policy containing divers and sundry terms and conditions; that neither at the time of the issuance of said policy of insurance nor at any time before the issuance thereof, nor at any time before the loss sustained by reason of the said fire of August 4, A. D. 1906, did said defendant advise said plaintiff of any of the conditions in said policy, nor did said defendant at any time before the loss occasioned and sustained by said fire of August 4, A. D. 1906, advise said plaintiff of the conditions contained in said policy of insurance relative to encumbrances, or relative to foreclosure proceedings, nor advise said plaintiff of the force and effect of any encumbrance upon the property covered by said policy of insurance, nor the force and effect of the beginning of any foreclosure proceedings to foreclose any mortgage, or trust deed upon the property covered by said insurance, nor call to the attention of said plaintiff in any manner whatsoever any of the divers and sundry conditions of said policy, or the force and effect of any of the conditions of said policy; that said plaintiff did not read said policy, nor the terms thereof, either at the time of its issuance, or any time prior to the said fire of August 4, A. D. 1906, nor did said plaintiff prior to said fire know of any of the conditions of said policy, nor the force and effect thereof, but that it at the time of making application for said insurance intended to secure as a consideration for the premium paid therefor a valid contract of insurance; that prior to the loss sustained by the said fire of August 4, A. D. 1906, said plaintiff did not

know that such a condition relative to the force and effect of foreclosure proceedings was in said policy and did not know prior to said fire that the mere filing of a bill of complaint, or the mere service of subpoena issued thereon and in consequence of the filing thereof would in any manner affect said policy or invalidate the same.

II.    That said plaintiff in consideration for the issuance of said policy gave to Anderson & Dorr of Pensacola, Fla., the regular and duly authorized agent of said defendant as part payment for the premium thereupon, its promissory note, which notwithstanding the fact that said Anderson & Dorr as the duly authorized agent of said defendant well knew of the filing of the bill of complaint and of the issuance of the subpoena in chancery thereon and of the service of said subpoena on said plaintiff on the 24 day of July, A. D. 1906, to foreclose that certain mortgage for the sum of $2500.00 executed by the Jernigan Lumber Co. payable unto Frances Matthews, as mentioned in plaintiff's plea number one, as amended, and well knew that that part of the property as described in Exhibit 'B' attached to the original declaration herein filed was destroyed by fire August 4, A. D. 1906, and well knew that that part of the property covered by said policy of insurance as described in Exhibit 'C' attached to the amended declaration herein filed was destroyed by fire on December 4, A. D. 1906, has insisted upon the payment of said notes given, as aforesaid, for part of the premium of said policy of insurance upon which this suit is brought and said plaintiff because of the demand and request of said defendant, as aforesaid, by its duly authorized agent, has since the said fire of August 4, A. D. 1906, and since the first of December 4, A. D. 1906, paid the balance due upon its notes given, as aforesaid, for the premium due upon said policy."

To these replications the defendant filed the following demurrer:

"The defendant demurs to the first replication to the first plea, and says that the said replication is bad in substance, because

1. The allegations of said replication as to the recording of the mortgage mentioned therein, and the knowledge of the defendant as to the existence of the same, set forth no answer to the said plea;

2. That the allegations of said replication as to the other mortgages given by plaintiff and the record thereof, set forth no answer to the said plea;

3. That the allegations of the said replication as to the action and promises of A. J. Matthews and the belief and consequent action by plaintiff based thereon, set forth no answer to the plea;

4. That the allegations of the said replication as to the transactions between plaintiff and the agent of defendant at the time of the issuance of said policy and as to the want of knowledge of plaintiff, as to the existence of the conditions in the policy, set forth no answer to the plea;

5. That neither all of the above mentioned allegations taken together, nor any one of them taken with any other one or more of them, or with any other allegations of the replication, set forth any answer to the plea;

6. That the said replication sets forth no answer to the plea.

The defendant for demurrer to the second replication to the first plea says that said replication is bad in substance, for that,

1. It does not show that the defendant accepted the promissory note of the plaintiff as part payment of the premium due on the said policy;

2. That the receipt by the defendant of payment of

the note given at the issuance of said policy for the premiums then due thereon, does not constitute a waiver of the forfeiture set forth in the said plea;

3. That the said replication does not show that the premiums accepted by the defendant as alleged were not earned, due and payable by plaintiff to defendant before the knowledge of the said forfeiture and before a loss. under said policy;

4. That the said replication does not set forth any answer to the plea."

Upon the argument the court sustained this demurrer and the plaintiff declining to plead further rendered final judgment in the defendant's favor. For review of these proceedings the plaintiff below brings the case here by writ of error.

*E. C. Maxwell* and *W. W. Flournoy,* for plaintiff in error;

*Blount & Blount & Carter,* and *Cockrell & Cockrell,* for defendant in error.

TAYLOR, J., *(after stating the facts).*—The assignments of error are as follows:

1st. The court erred in overruling plaintiff's demurrer to defendant's plea No. 1.

2nd. The court erred in sustaining defendant's demurrer to plaintiff's first replication to plea No. 1.

3rd. The court erred in denying plaintiff's motion to withdraw demurrer to second plea and file in lieu thereof replication. We will dispose first of this third assignment of error with the remark that the record before us presents nothing upon which this assignment can be predicated or considered. After the court below had made an order eliminating the defendant's second plea from

the case by sustaining the plaintiff's demurrer thereto, there appears transcribed in the record 'the following motion:

"Now comes said plaintiff and moves said court for leave to withdraw its demurrer herein filed to the second plea of the defendant."

No ruling or other action appears by the transcript to have been made or taken by the court below upon this motion or by the parties. Under these circumstances there is nothing presented for review by this third assignment of error.

The policy sued upon contains the following provision:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed."

The first plea of the defendant invokes this clause of the policy to its defence, and succinctly, fully and clearly alleges that the said policy, prior to the alleged destruction of the property thereby insured by fire, became void by force of said provision therein, that prior to the alleged destruction of the insured property by fire foreclosure proceedings were commenced, with the knowledge of the plaintiff, to foreclosure a valid, subsisting and unpaid mortgage theretofore executed upon the insured property, and that no written agreement of the defendant herein to the commencement of the said proceedings has ever been endorsed upon the said policy or added thereto. This provision in a policy of fire insurance appeals to us as a wise and proper safeguard to the insurer against the greatly increased risk consequent upon the circumstances provided against therein. Mortgages

are not usually enforced by foreclosure when the mortgagor or person liable for their payment is able to liquidate them when due, but such proceedings are usually brought about by the inability of the mortgagor to pay the mortgage debt when due.    The temptation to destroy the property and with the funds derived from existing insurance thereon to pay · off the mortgage demand is multiplied fourfold when legal proceedings are actually instituted, and the final loss of the entire property to the mortgagor thereby becomes imminent.    As a safeguard against such a contingency the quoted clause is wisely and properly inserted in such policies, and the plain meaning and proper and legitimate purpose of such a clause should not be emasculated and annulled by any process of specious reasoning or judicial special pleading.    The plain meaning and purpose of the clause is that such a policy shall become void if, with the knowledge of the insured, foreclosure proceedings of any mortgage, whether executed by the insured or by another, covering any of the insured property shall be commenced during the life of the policy, unless there shall be an agreement endorsed upon or added to the policy providing otherwise.

The plea of the defendant concisely, fully and sufficiently alleges the commencement of foreclosure proceedings of a valid and subsisting mortgage upon the insured property, and that the insured had knowledge of such proceedings, and that no agreement had been indorsed upon or added to such policy providing against the avoidance of such policy by the commencement of such foreclosure proceedings, and that, therefore, said policy sued upon became null and void and no longer binding upon the defendant insurer, and such plea presented a valid defense and was not subject to the demurrer interposed thereto, and the court below committed no error in

overruling such demurrer. From among a multitude of authorities upholding the validity and propriety of such provisions in policies of fire insurance we cite the following: Schroeder v. Imperial Ins. Co., 132 Cal. 18, 63 Pac. Rep. 1074, S. C. 84 Am. St. Rep. 17. In this case it is held that such a provision in a policy: "is directed to the fact of knowledge on the part of the insured of the commencement of foreclosure proceedings, and not to the time that he may obtain such knowledge. The reasonable construction to be given to the clause is, that whenever he shall have knowledge of the proceedings, and not before, and shall fail to obtain the consent of the insurer thereto, the policy shall be avoided." We are in full accord with this construction of the California court. Findlay v. Union Mut. Fire Ins. Co., 74 Vt. 211, 52 Atl. Rep. 429, S. C. 93 Am. St. Rep. 885; Woodard v. German-American Ins. Co. of New York, 128 Wis. 1, 106 N. W. Rep. 681; Hayes v. United States Fire Ins. Co., 132 N. C. 702, 44 S. E. Rep. 404; Moore v. Hanover Fire Ins. Co., 141 N. Y. 219, 36 N. E. Rep. 191; Norris v. Hartford Fire Ins. Co., 55 S. C. 450, 33 S. E. Rep. 566, S. C. 74 Am. St. Rep. 765; McIntire v. Norwich Fire Ins. Co., 102 Mass. 230; Meadows v. Hawkeye Ins. Co., 62 Iowa 387, 17 N. W. Rep. 600; Hartford Fire Ins. Co. v. Clayton, 17 Tex. Civ. App. 644, 43 S. W. Rep. 919; Delaware Ins. Co. of Philadelphia v. Greer, 120 Fed. Rep. 916; Titus v. Glens Falls Ins. Co., 81 N. Y. 410; Woodside Brewing Co. v. Pacific Fire Ins. Co., N. Y. 11 App. Div. 68, 42 N. Y. S. 620; Merchants' Ins. Co. of Newark v. Brown. 77 Md. 79, 25 Atl. Rep. 992.

We are cited to the case of Bellevue Roller Mill Co. v. London & L. Fire Ins. Co., decided by the Supreme Court of Idaho in February, 1895, 4 Idaho 307, 39 Pac. Rep. 196, as holding a different doctrine from that an-

nounced in the cases cited above.   We cannot at all approve of the findings of the Idaho court in this case. The plain terms of the clause under discussion were lost sight of entirely in that court's construction thereof.   For example the clause provides that the policy shall be void if, "with the knowledge of the insured foreclosure proceedings be commenced," that court holds that under this language to constitute a defense the insurer must allege that the insured had knowledge that a foreclosure proceeding "was *about to be brought*," and that then he is required to give notice to the insurance company.   The clause in question makes no provision about notice to the insurance company—but, on the contrary, broadly avoids the policy if foreclosure proceedings are commenced with the knowledge of the insured, unless otherwise provided by an agreement endorsed upon or added to the policy.   Under this clause, as we view it, it will make no difference whether the insured notified the insurer or not of the commencement of foreclosure proceedings, the institution of such proceedings, upon the acquisition of knowledge thereof by the insured, no matter when he may acquire such knowledge, if acquired prior to the loss of the property, avoids the policy, unless it be otherwise provided by an agreement endorsed upon or added to the policy.

The first replication of the plaintiff to the defendant's first plea seems to have been drafted to meet the construction of the Idaho court of the clause under discussion, but with that construction, we cannot agree. This first replication of the plaintiff to the defendant's first plea admits the commencement of proceedings to foreclose a mortgage covering the insured property, and admits that the insured plaintiff acquired knowledge of the commencement of such proceedings after, but on the same day, that they were commenced, which was prior

to the destruction of the property by fire, and admits that no agreement was endorsed upon or added to the policy providing otherwise than that such commencement of foreclosure proceedings should avoid the policy. These admissions of the replication closed the door to the plaintiff's right to the relief sought by his suit, and the side agreement alleged in such replication between the insured plaintiff and the foreclosing mortgagee that such foreclosure proceedings would be discontinued if the insured would pay part of the mortgage debt on his return from Boston, can make no difference with the forfeiture of such policy effected by the actual commencement of such foreclosure proceedings. The first replication of the plaintiff to the first plea of the defendant set up nothing in avoidance of the defense alleged by such plea and the court below committed no error in sustaining the defendant's demurrer to such first replication to said first plea.

Finding none of the errors assigned to be well taken, the judgment of the circuit court in said cause is hereby affirmed at the cost of the plaintiff in error.

COCKRELL, J., disqualified.

WHITFIELD, J.—I concur in the conclusion reached in the opinion of Mr. Justice TAYLOR.

It appears that before the commencement of the foreclosure proceedings the insured mortgagor knew the debt secured by the mortgage was due, and knew the mortgagee contemplated enforcing the mortgage lien. It also appears that the insured mortgagor endeavored to make arrangements to postpone the institution of the foreclosure proceedings, and that he was notified of the commencement of the suit *on the same day but after the bill for foreclosure was filed.* In view of the circum-

stances of this case it seems to be clear the foreclosure proceedings were commenced with the knowledge of the insured mortgagor within the meaning of the provision contained in the policy of insurance so as to render the policy void unless otherwise provided by agreement endorsed on the policy. The provision is clear, imperative and unambiguous, is intended to serve a highly salutary and useful purpose, is not contrary to any provision or principle of law, and is not unreasonable, therefore it is binding on the parties unless waived, and no waiver appears in this case.

SHACKLEFORD, C. J., concurs with WHITFIELD, J.

PARKHILL, J., (*dissenting*).—In my opinion the court erred in sustaining the demurrer to the first replication to plea number one as amended.

By that plea the defendant company invoked the following provision of the contract of insurance: "This entire policy, unless otherwise provided by agreement endorsed hereon, or attached hereto, shall be void if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed."

The replication admits that the policy of insurance contained the condition just quoted, but, "alleges that said foreclosure proceedings were not commenced either with its knowledge or consent, but in truth and in fact the filing of the bill of complaint, and the instance of the subpoena thereon on the 24th day of July, A. D. 1906, was without either the knowledge or consent of said plaintiff; that said plaintiff had no knowledge of the filing of the bill of complaint, nor of the issuance of the subpoena in consequence thereof until the subpoena was served upon it, on the 24th day of July, A. D. 1906."

I am of the opinion that the replication shows that the foreclosure proceedings were not commenced with the knowledge of the insured plaintiff, and that the demurrer thereto should have been overruled.

When may it be said that foreclosure proceedings are commenced according to our statute?

All mortgages shall be foreclosed in chancery. Section 2501 of the General Statutes of 1906. No subpoena in chancery shall issue until a bill of complaint shall have been filed in the clerk's office. Section 1862 of the General Statutes of 1906.

The issuance or service of subpoena is preceded by the filing of the bill of oreclosure. The bill comes before the issuance or service of the subpoena. The bill initiates the foreclosure proceedings. To initiate means to commence. "Commence" is defined in the Century Dictionary as "to cause to begin to be, *perform the first act of,* enter upon, *begin;*" as defined by Webster, "to begin, to originate, *to do the first act in anything, to take the first step."* State v. Hartford Fire Ins. Co., 99 Ala. 221, 13 South. Rep. 362; 2 Words and Phrases, 1281.

"In England it is settled that the filing of a bill or declaration is to be regarded, for every essential purpose, as commencement of the suit." Lowry v. Lawrence, 1 Caines (N. Y.) 69 text 72 (quoting Cowp. 454).

In Burton v. Buckeye Insurance Co., 26 Ohio St. 467, WELCH, C. J., for the court said: "The real question here is one of construction of the policy: what did the parties mean by the word 'commenced,' in this limiting clause? In common parlance, a suit or action would be considered as 'commenced,' perhaps, when the first step is taken in court. This, under our law, is the filing of the petition. The proviso in the policy being in the nature of a penal provision, it is by no means clear to me that it should not be interpreted in that sense." The

Supreme Court of Louisiana has said that "commencement of foreclosure proceedings" must be held to be synonymous with "filing of suit." Stenzel v. Pennsylvania Fire Ins. Co., 110 La. 1019, 35 South. Rep. 271; and the Idaho Supreme Court has held that the suit was commenced when the complaint was filed. Bellevue Roller Mill Co. v. London & L. Fire Ins. Co., 4 Idaho 307, 39 Pac. Rep. 196.

Whether we give to the word "commenced" its common meaning, or whether we construe its meaning in the light of the provisions of the General Statutes already quoted, it is clear to me that the filing of the bill of complaint commences the foreclosure proceedings. But this proposition is admitted, as the brief of counsel for the defendant in error admits, on page 6, that the filing of a bill is in this State the commencement of a suit. Certainly the service of the subpoena upon the defendant was not the commencement of the foreclosure proceedings because the subpoena cannot issue until the bill of complaint shall have been filed.

When the replication, therefore, alleges that the insured had no knowledge of the filing of the bill of complaint until a subpoena was served upon the insured, it is made clear that the foreclosure proceedings were not commenced with the knowledge of the insured.

The language of the policy is so plain and unambiguous and there is such unanimity as to what is meant by the commencement of foreclosure proceedings it would seem that there could be but one side to this question.

But counsel for defendant in error contend, "The true meaning of the provision is that if foreclosure proceedings be commenced and knowledge thereof be brought to the assured, he must, after such knowledge, bring notice to the insurance company and require its consent to be endorsed on or added to the policy."

If we keep before us the words of the policy, "if with the knowledge of the insured foreclosure proceedings be commenced," the departure therefrom of the contention of counsel will be seen easily, clearly and quickly. The language of the policy is, "if with the knowledge of the insured foreclosure proceedings be commenced." Counsel would have us read the policy thus: "If foreclosure proceedings be commenced and knowledge thereof be brought to the assured." In other words, the policy requires the foreclosure proceedings to be commenced *with the knowledge of the insured,* but counsel contend that the foreclosure proceedings to be commenced *and knowledge thereof be brought to the insured.*

To analyze further, counsel would substitute for the words of the policy, "with the knowledge of the insured," the words, "knowledge thereof be brought to the insured." This departure, thus changing by construction of the language of the policy, is emphasized by the further contention of counsel for defendant in error: "The words 'be commenced with a knowledge of the assured' relate not to the act of commencement, but to the fact of commencement, that is, not to the time of commencement, but to the status created by the commencement."

What principles of law authorize such a loose construction of the language of the policy? In the first place, it seems to me that the language of the policy is clear and unambiguous and the courts as well as the parties must be bound by the language of the policy; and that language clearly relates to the time of commencement of the foreclosure proceedings, not to the fact of the commencement of them. But even if the language of the policy were of a doubtful meaning or import, it is the universal rule that the construction which is most favorable to the insured is to be placed upon it. London & L. Fire Ins. Co. of Liverpool, England v. Davis,

37 Tex. Civ. App. 348, 84 S. W. Rep. 260; Goddard v. East Texas Fire Ins. Co., 67 Tex. 69, 1 S. W. Rep. 906, S. C. 60 Am. Rep. 1; Bills v. Hibernia Ins. Co., 87 Tex. 547, 29 S. W. Rep. 1063, 29 L. R. A. 706, 47 Am. St. Rep. 121.

If the language used in the policy of insurance is ambiguous, if it bears hard upon the insurance company, if it must hurt any one, it must be the company to suffer, because that language was chosen by the insurance company. The insured had no choice in the matter, except to accept or reject the policy as it was written by the company in its own office by advice of its own lawyers. The policy was accepted as it was written by the defendant company, and the plaintiff only asks that this court accept and enforce the plain language of the policy as it has been written by the defendant company. The plaintiff asks for nothing more. He should have at the hands of our court nothing less.

Moreover, if the condition of the policy is of doubtful import it should be construed in favor of the insured because the law does not favor forfeiture, and will always give preference to that reasonable construction which will sustain the claim of the insured. London & L Fire Ins. Co. v. Davis, *supra;* Brown v. Palatine Ins. Co., 89 Tex. 590, 35 S. W. Rep. 1060.

It is said in May on Insurance, section 175: "No rule in the interpretation of a policy is more fully established, or more imperative or controlling than that which declares that in all cases it must be liberally construed in favor of the assured, so as not to defeat, without a plain necessity, his claim for indemnity, which it was his object to secure in making the insurance."

Again, "contracts of insurance like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used; and if they are

clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense." Imperial Fire Ins. Co. v. Coos county, 151 U. S. 452, text 463 (38 L. ed.) 231, text 235, 14 Sup. Ct. Rep. 379; Fred J. Kiesel & Co. v. Sun Ins. Office of London, 31 C. C. A. 515, text 518, 60 U. S. App. 10, 88 Fed. Rep. 243, text 246; McGlother v. Provident Mut. Acc. Co. of Philadelphia, 32 C. C. A. 318, text 322, 60 U. S. App. 705, 89 Fed. Rep. 685, text 689.

I think all of us will accept these rules of construction. Applying them to the language used in the policy sued upon, I think the conclusion already arrived at in this opinion is inevitable.

Clearly the words of the policy, "if, with the knowledge of the insured, foreclosure proceedings be commenced" relate to the time of the commencement of the foreclosure proceedings, and not to the fact of commencement. If these words be enlarged to mean that the policy shall be void if foreclosure proceedings be commenced and knowledge thereof at any time be brought to the insured, then the meaning of the language of the contract would be enlarged by the court so as to bind the insured to a forfeiture of the policy if he acquires knowledge of the foreclosure proceedings after they have been commenced, when he bound himself to a forfeiture only if he had knowledge of the foreclosure proceedings when the same were *commenced*. Such a construction would be a departure from the plain language employed and would be a construction of the language favorable to the insurer and favorable to a forfeiture, where the language must be construed most favorably to the insured so as not to defeat his claim for indemnity.

Thus far I have contented myself with a construction

of the language employed by the parties to the contract
of insurance, but let us consider some of the argu-
ments made by counsel against the construction indulged
in by me. Counsel for plaintiff in error contend: "Nor
would the provision be of any value if the insured be
requested to have the knowledge at the time of the com-
mencement of the suit, because this involves constant
presence of the insured with the mortgagee, or his con-
stant presence at the office of the clerk of the circuit
court where the proceedings are instituted, for, if he must
know at the moment, then a knowledge acquired after
the filing of a bill (which is in this State the com-
mencement of a suit), would be equally inoperative to
protect the insurer as if that knowledge be acquired an
hour, a day or a week thereafter." A sufficient reply
is, that if this provision be of no value it is the fault of
the defendant company. If the defendant corporation
wanted to make the contract apply to knowledge of the
foreclosure proceedings acquired after the commence-
ment of them, or after the filing of the bill of complaint,
it should have so written the policy, and it is not the
province of this court to make a new contract of insur-
ance for the parties, whereby the corporation may be en-
abled to keep from paying to citizens of this State the
money contracted by the defendant corporation to pay,
especially when the defendant corporation keeps in its
coffers the money of the plaintiff paid for this contract
of insurance. The following cases will be found to sup-
port the views expressed and the conclusion reached by
me herein: London & L. Fire Ins. Co. of Liverpool,
England, v. Davis, 37 Tex. Civ. App. 348, 84 S. W.
Rep. 260; North British & Mercantile Ins. Co. v. Free-
man,     Tex. Civ. App.     , 33 S. W. Rep. 1091;
Bellevue Roller Mill Co. v. London & L. Fire Ins. Co.,
4 Idaho 307, 39 Pac. Rep. 196.

The decision in the case of Norris v. Hartford Fire Ins. Co., 55 S. C. 450, 33 S. E. Rep. 566, 74 Am. St. Rep. 765, holds that the commencement of a suit is when the summons is served because, according to the statute, "an action is commenced as to each defendant when the summons is served on him." This case is regarded as an authority in favor of, rather than against, the position of plaintiff in error.

As opposed to these cases, defendant in error cites, in support of its position the following cases: Schroeder v. Imperial Ins. Co., 132 Cal. 18, 63 Pac. Rep. 1074, 84 Am. St. Rep. 17; Findlay v. Union Mut. Fire Ins. Co., 74 Vt. 211, 52 Atl. Rep. 429; Delaware Ins. Co. v. Greer, 120 Fed. Rep. 916, 57 C. C. A. 188, 61 L. R. A. 137.

Counsel for defendant in error express the opinion that the two Texas cases seem to be opposed to the decision by one of the same courts in Hartford v. Clayton, 17 Tex. Civ. App. 644. In commenting upon that case, the Texas court, in London & L. Fire Ins. Co. v. Davis, *supra,* said: "In the case of Insurance Co. v. Clayton (Tex. Civ. App.) 43 S. W. 910, it was held that the condition as to the commencement of foreclosure proceedings with the knowledge of the insured was a valid and binding clause and that the clause is not waived by the fact that the insurance company knew of the existence of the mortgage at the time of the issuance of the policy. The question involved in this case was not adverted to in any manner."

The opinion of the court by Mr. Justice FLY, in London & L. Fire Ins. Co. v. Davis, is an able exposition of the subject before us and a comprehensive review of nearly all the cases that bear directly or indirectly upon this question.

When we consider the conflict in the authorities there

would seem to be two sides to this question.   That being
so, if there are two ways of construing the language of
the policy, one construction in favor of the insured and
another construction in favor of the insurer, I am re-
quired by the rules of construction to decide in favor
of the construction most favorable to the insured.   That
consideration must determine my judgment, if I were
not otherwise convinced by the plain words used in the
policy.

I think the judgment should be reversed.

HOCKER, J., concurs with PARKHILL, J.