(August 4, 1923.)

CAROLINE L. MABEE, Respondent, v. CONTINENTAL CASUALTY COMPANY, a Corporation, Appellant.

[219 Pac. 598.]

ACCIDENT INSURANCE—INSURED NOT RESPONSIBLE FOR FATAL INJURY—INSTRUCTIONS — INJURY SUSTAINED WHILE UNDER INFLUENCE OF INTOXICANTS—FALSE STATEMENT IN APPLICATION—KNOWLEDGE OF AGENT—KNOWLEDGE OF COMPANY—WAIVER.

1. In an action to recover upon an accident insurance policy, where it appears from the evidence that the deceased was shot from behind by his assailant without warning, after an interval of time following the termination of a violent altercation, during which interval the slayer left the scene of the quarrel and entered a house

Publisher's Note.
1. When death or injury may be deemed to have been caused by accidental means, though the voluntary act of insured was the cause thereof, see notes in 8 Am. St. 763; 1 Ann. Cas. 789; Ann. Cas. 1917A, 88; 5 L. R. A., N. S., 657; L. R. A. 1915E, 127; L. R. A. 1916B, 1021.

and the deceased was preparing to leave, *held*, that the deceased did not lose his life as the result of any personal bodily injury effected other than by the happening of an external, violent and purely accidental event.

2. *Held*, that under the evidence the trial court did not err in giving the following instruction: "As to the issue that the death of the said Mabee was the natural, proximate and probable consequence of his unlawful assault upon the said Wagoner, and not the result of a personal bodily injury effected solely and independently of all other causes by the happening of an external, violent and purely accidental event, I instruct you that there is no evidence to sustain the same, and you will find for the plaintiff on that issue."

3. Where an accident insurance policy provides that no recovery can be had thereunder for injury sustained while the insured was "under the influence of any intoxicant or narcotic," before the insurance company can avoid the policy on that ground it must appear that the insured who suffered fatal injury was under such influence to a degree that substantially impaired his judgment in the exercise of the faculties essential to his safety and made him irresponsible for his acts.

4. *Held*, that the instructions given by the court on the question of intoxication of the deceased at the time the fatal injury was received were not prejudicial to defendant company.

5. Where an accident insurance policy provides that if the insured shall carry other insurance with another company "covering the same loss without giving written notice to the company, then in that case the company shall be liable only for such proportion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such portion of the premium paid as shall exceed the *pro rata* for the indemnity thus determined," and the application contains a statement that the applicant carries no other insurance, but the agent who takes the application is informed of and is at that time shown another policy for the same loss, and thereafter the company accepts the application and issues the policy, the knowledge of the agent is the knowledge of the company, and in case of loss and suit to recover on the policy the company will not be permitted to set up the defense that the policy was rendered void by the violation of such condition.

3. Scope and effect of provisions in policies of insurance forbidding the use of intoxicating liquor, see notes in 13 **Ann. Cas.** 516; 15 **L. R. A.**, N. S., 206; 25 **L. R. A.**, N. S., 1241.

5. Insurance broker's knowledge as to other insurance, see note in 38 **L. R. A.**, N. S., 638.

6. Where the complaint contains no allegation of waiver but the affirmative answer tenders that issue, evidence is properly admissible thereunder on behalf of plaintiff as rebuttal matter to meet a defense attempted to be raised by the defendant.

APPEAL from the District Court of the Eighth Judicial District, for Bonner County.   Hon. John M. Flynn, Judge.

Action to recover upon an accident insurance policy. Judgment for the plaintiff.   *Affirmed.*

Herman H. Taylor, for Appellant.

Where a policy insures against an injury effected by accidental means or by an accidental event, it is not enough that the death or injury should be unexpected or unforeseen, but there must be something of an unforeseen character in the means whereby the injury was received. (*Smith v. Travelers' Ins. Co.*, 219 Mass. 147, 106 N. E. 607, L. R. A. 1915B, 872; *Maryland Cas. Co. v. Spitz,* 246 Fed. 817, L. R. A. 1918C, 1191; *Carnes v. Iowa Traveling Men's Assn.*, 106 Iowa, 281, 68 Am. St. 306, 76 N. W. 683; *Horton v. Travelers' Ins. Co.*, 45 Cal. App. 462, 187 Pac. 1070; *Pledger v. Business Men's Assn.* (Tex. Civ.), 197 S. W. 889; *Johnson v. Aetna Life Ins. Co.*, 24 Ga. 431, 101 S. E. 134; *Husbands v. Indiana Travelers' Acc. Assn.* (Ind.), 133 N. E. 130; *Kendall v. Travelers' Prot. Ins. Co.*, 87 Or. 179, 169 Pac. 751; *Rock v. Travelers' Ins. Co.*, 172 Cal. 462, L. R. A. 1916E, 1196, 156 Pac. 1029; *Martin v. People's Mut. Life Ins. Co.*, 145 Ark. 43, 223 S. W. 389, 11 A. L. R. 1111.)

Where the insured brings about an assault upon himself by his own wrongful act, or where under such circumstances he would naturally be presumed to know that injury is likely to be inflicted, and he voluntarily places himself in a position that may be reasonably expected to bring about an assault upon him, an injury so received is not effected by accidental means or by an accidental event. (*Taliaferro v. Travelers' Prot. Assn.*, 80 Fed. 368, 25 C. C. A. 494; *Prudential Casualty Co. v. Curry,* 10 Ala. App. 642, 65 So. 852; *Price v. Occ. Life Ins. Co.*, 169 Cal. 800, 147 Pac. 1175;

*Postler v. Travelers' Ins. Co.,* 173 Cal. 1, 158 Pac. 1022; *Hutton v. State Acc. Ins. Co.,* 267 Ill. 267, Ann. Cas. 1916C, 577, 108 N. E. 296, L. R. A. 1915E, 127; *Meister v. General Acc. Corp.,* 92 Or. 96, 179 Pac. 913; *Interstate Business Men's Acc. Assn. v. Lester,* 257 Fed. 225, 168 C. C. A. 309; *Fidelity & Casualty Co. of New York v. Staceys,* 143 Fed. 271, 6 Ann. Cas. 955, 74 C. C. A. 409, 5 L. R. A., N. S., 657.)

Under the exemption provision of the policy it was the duty of the court to direct a verdict in favor of the defendant, as the undisputed facts clearly disclosed that the assured was shot while he was not only under the influence of an intoxicant, but was in fact intoxicated or drunk. (*Shader v. Railway Passenger Ins. Co.,* 66 N. Y. 441, 23 Am. Rep. 65; *Standard Life & Acc. v. Jones,* 94 Ala. 434, 10 So. 530; *Campbell v. Fidelity & Casualty Co.,* 109 Ky. 661, 60 S. W. 492; *Bakalars v. Continental Cas. Co.,* 141 Wis. 43, 18 Ann. Cas. 1123, 25 L. R. A., N. S., 241, 122 N. W. 721; *Furry's Admr. v. General Acc. Ins. Co.,* 80 Vt. 526, 130 Am. St. 1012, 13 Ann. Cas. 515, 68 Atl. 655, 15 L. R. A., N. S., 206.)

It was error for the court to permit the introduction of oral testimony as to a waiver, as no waiver was pleaded. (*McLeod v. Travelers' Ins. Co.,* 8 Ga. App. 765, 70 S. E. 175; *Barclay v. London Guarantee Co.,* 46 Colo. 558, 105 Pac. 865; *Cranston v. West Coast Life Ins. Co.,* 63 Or. 427, 128 Pac. 427; *Snell v. North British & Mercantile,* 61 Mont. 547, 203 Pac. 521; *Stearns Lumber Co. v. Travelers Ins. Co.,* 159 Wis. 627, 150 N. W. 991; *Edwards v. Sovereign Camp,* 61 Okl. 243, 161 Pac. 170; *Aronson v. Frankfort Acc. Co.,* 9 Cal. App. 473, 99 Pac. 537; *Atlas Life Ins. v. Moman,* 14 Ala. App. 400, 69 So. 989; *Modern Woodmen v. Weekley,* 42 Okl. 25; 139 Pac. 1138.)

The testimony relative to the conversation with one Hutchinson showed that he was a mere soliciting agent for the defendant. A soliciting agent has no authority to waive any of the conditions of the policy. (*Merchants & Planters' Ins. Co. v. Marsh,* 44 Okl. 453, 125 Pac. 1100, 42 L. R. A., N. S., 996; *House v. Security Fire Ins. Co.* (Iowa), 121

N. W. 509; *Kansas City Life Ins. Co. v. Blackstone* (Tex.
Civ.), 143 S. W. 702; *Scrivner v. Anchor Fire Ins. Co.*, 144
Iowa, 328, 122 N. W. 942; *Belden v. Union Cent. Life,* 167
Cal. 740, 141 Pac. 370; *McElroy v. Metropolitan Life,* 84
Neb. 866, 19 Ann. Cas. 28, 122 N. W. 27, 23 L. R. A., N. S.,
968; *Romano v. Concordin Fire Ins. Co.,* 121 App. Div. 489,
106 N. Y. Supp. 63; *Henning v. American Ins. Co.,* 108 Kan.
194, 194 Pac. 647; *Mutual Life Ins. Co. v. Powell,* 217 Fed.
565, 133 C. C. A. 417; *Modern Woodmen v. Weekley, supra;*
*New York Life v. Patten,* 151 Ga. 185, 106 S. E. 183; *Mc-*
*Cormack v. Security Mutual Life,* 220 N. Y. 447, 116 N. E.
74; *Elliott v. Frankfort Marine etc. Ins. Co.,* 172 Cal. 261,
156 Pac. 481, L. R. A. 1916F, 1023.)

Wm. J. Costello, for Respondent.

Evidence of waiver was admissible under the pleadings.
(*Douville v. Pacific Coast Casualty Co.,* 25 Ida. 396, 138
Pac. 506; *McKune v. Continental Casualty Co.,* 28 Ida. 22,
154 Pac. 990.)

Appellant was bound by the act of Hutchinson within his
apparent authority as its acknowledged agent. (C. S.,
secs. 5013, 5019; *Carroll v. Hartford Fire Ins. Co.,* 28 Ida.
466, 154 Pac. 985.)

In cases like the one at bar, where death occurred by vio-
lent means external to the man and against or without in-
tention or concurrence of will on the part of the man, death
may properly be called an accident. (2 Biddle on Insur-
ance, p. 780.)

FEATHERSTONE, District Judge.—This action was
brought to recover upon an accident insurance policy cover-
ing the life of Herbert M. Mabee, and is brought by his
widow Caroline L. Mabee, the respondent, to recover for the
accidental death of her husband. The answer denies the
material allegations of the complaint, and upon the issues
made the case was tried by the court with a jury and re-
sulted in a verdict and judgment in favor of the respondent
in the sum of $2,530, together with interest and costs. A

motion for a new trial was denied, and this appeal was taken from the judgment and order denying the motion. Numerous errors are assigned, but, as we view the case, only a few of them need to be specifically reviewed in this opinion.

It appears from the record that Herbert M. Mabee was killed on the street in Paradise, Montana, by one Gus Wagoner on October 17, 1920. Mabee was standing thirty or forty feet from the entrance of Wagoner's store, and was facing in such a direction that he could not see the entrance. He was talking to some men who had just helped him put on his coat, and was holding his hat in his left hand brushing it when Wagoner rushed out of his store and shot Mabee. Two or three eye-witnesses witnessed the killing and swore that Wagoner hit Mabee, and that the gun went off simultaneously. One witness for the appellant testified that Wagoner struck Mabee, and then struck him again and missed him, that while his hand was going up after missing him the gun went off. The three witnesses who saw the shooting agree that Mabee took no part in the immediate affair of shooting. There is evidence that previous to the shooting which occurred a little after 10 o'clock in the forenoon, Wagoner and Mabee had been wrangling about a $5 bill which each claimed. This quarrel had lasted about fifteen minutes, and then Mabee and Wagoner stepped outside of Wagoner's store where the quarrel had taken place, and both squared off for a fight. The contestants were, however, separated, and Wagoner was sent indoors while Mabee was picked up, and it was from one to three minutes after Wagoner had gone into the house, and when the backs of everyone present were turned to the house, that Wagoner rushed out and shot Mabee.

There was no evidence introduced by either side bearing upon the question as to whether Wagoner or Mabee was right in their respective contentions with reference to the $5 bill, or as to who started the dispute or was to blame. However, it was undisputed that Wagoner had purchased a $25 jug of moonshine at 7 o'clock in the morning and had been drinking. Mrs. Wagoner testified that Mabee had not been drink-

ing moonshine, and there is no testimony that anyone saw him drink anything on that morning. The testimony shows that Mabee went from the Wagoner place to the depot where he stayed from 8 A. M. until 9:30 A. M. Two witnesses testified that they smelled his breath and that he showed no evidence of having had a drink.

There is evidence to the effect that Mabee had torn Wagoner's shirt in the quarrel, and had made his nose bleed; that after the fight Mabee seemed reluctant to leave when two Northern Pacific Railroad men endeavored to get him to come away from the place of the quarrel, and that after Wagoner had gone inside the building Mabee holloed in a loud voice, "You German ——, I will kill you," and that Wagoner came out later with a gun in his hand, and just after he struck Mabee said, "What did you call me, you ——? What did you say you would do to me?"

The evidence shows that one Hutchinson solicited insurance for the defendant in May of 1920, and that at that time Mabee had a similar policy with the Pacific Mutual Life Company, which fact was communicated to Hutchinson, who endeavored to induce the deceased to cancel the Pacific Mutual Life Insurance Policy and carry the entire amount with the Continental Casualty Company.

It is contended that the insured did not lose his life as the result of any personal bodily injury effected solely and independently of all other causes than by the happening of an external, violent and purely accidental event, and that the injury was not unforeseen by Mabee, but that he should have expected it.

Appellant maintains that the undisputed evidence shows that deceased by his wrongful conduct brought the assault upon himself, and had placed himself in a position where it might reasonably be expected that he would be shot. If the insured was voluntarily doing something at the time of his death, the natural and probable consequence of which was the shooting resulting in his death, then the appellant would be correct in its position; but the evidence as we view it warrants no such inference.

Upon this evidence the trial court instructed the jury as follows:

"As to the issue that the death of the said Mabee was the natural, proximate and probable consequence of his unlawful assault upon the said Wagoner, and not the result of a personal bodily injury effected solely and independently of all other causes by the happening of an external, violent and purely accidental event, I instruct you that there is no evidence to sustain the same, and you will find for the plaintiff on that issue."

The appellant complains of this instruction and claims that it was the duty of the respondent to prove by a preponderance of the evidence that the injury was not the natural, proximate and probable consequence of an unlawful assault by the deceased upon Wagoner, and was the result purely of a personal, bodily injury effected solely and independently of all other causes by the happening of an external, violent and purely accidental event.

But the evidence conclusively showed, as already stated, that the fighting, quarreling and abusive language and conduct on the part of the deceased had stopped. The uncontradicted evidence conclusively showed that, as far as the deceased was concerned, the quarrel had been abandoned and was at an end. He had been picked up, had put on his coat, and was in the act of brushing off his hat, undoubtedly with the view of placing it upon his head and proceeding on his way, when he was shot and killed. As far as Wagoner was concerned, he had gone into the house, and returned most unexpectedly, the witness Roehl testifying that all were surprised when Wagoner came out again. All of the circumstances point unfailingly to the fact that the assault upon the deceased by Wagoner was wholly unexpected, and that in all probability Mabee was killed without having realized that he was ever in danger of such an assault and immediate death. Mabee was shot from the rear, was killed apparently without knowledge of what was happening, and certainly without the slightest opportunity at

the time to defend himself or to avoid the assault and its deadly consequences.

It seems to us that no reasonable person viewing the circumstances from an impartial standpoint would say that, because of the preceding events it was at all probable that Wagoner would return to commit this murderous assault, and that Mabee should have foreseen this as the natural and probable consequence of his altercation with Wagoner. The mere fact of only minutes elapsing instead of hours or days between the altercation in which the deceased was an actor and the subsequent assault upon him is of little consequence, the all-important fact being that the quarrel had definitely ceased, and that in the assault which subsequently was made upon him the deceased was not only not an actor but was in fact an unconscious victim.

We think, therefore, that the trial court did not err in holding that there was no conflict in the evidence on this point requiring its submission to the jury. None of the cases cited by the appellant in support of its contention is in point. These are: *Taliaferro v. Travelers' Protective Assn.*, 80 Fed. 368, 25 C. C. A. 494; *Fidelity & Casualty Co. of New York v. Staceys*, 143 Fed. 271, 6 Ann. Cas. 955, 5 L. R. A., N. S., 657, 74 C. C. A. 409; *Postler v. Travelers' Ins. Co.*, 173 Cal. 1, 158 Pac. 1022; *Prudential Casualty Co. v. Curry*, 10 Ala. App. 642, 65 So. 852; *Hutton v. State Accident Ins. Co.*, 267 Ill. 267, Ann. Cas. 1916C, 577, 108 N. E. 296, L. R. A. 1915E, 127; *Interstate Business Men's Accident Assn. v. Lester*, 257 Fed. 225, 168 C. C. A. 309.

It will not be necessary to review these cases, but it will suffice merely to point out that in every case cited the injury to the insured occurred during the course of the original altercation in which the assured was the aggressor. These cases would no doubt have all been in point had the deceased been killed in the course of his quarrel with Wagoner, but this was not the case.

It is unnecessary to discuss the contention of appellant that instruction number 4 was erroneous, because it follows that, if the trial court properly withdrew the question of

whether the altercation had ended from the jury, then the further instruction · that, if "Wagoner had gone into the house and the said Mabee was standing in the yard with his hat in his hand, that he was not aware of the approach of the said Wagoner, and that the said Wagoner came upon him, then I instruct you that the said Mabee, at the time of the infliction of said injury, was not engaged in fighting, and the defendant must fail of that defense," was merely restating the position the court had already taken upon this matter in a little different way and was explanatory thereof.

Appellant, however, complains that this instruction did not take into consideration the other, prior occurrences, particularly the fact that just prior Mabee had used violent language, set out above. We think that there is nothing in ·this contention. The question was: Had the prior quarrel ceased? Had Mabee withdrawn from it? Was it at an end as far as he was concerned, and did he believe, and was he justified in the belief, that the altercation was at an end? As we have already said, we believe no other view may be taken of the evidence upon an impartial consideration thereof.

Appellant next maintains that the trial court erred in giving *instruction number 5*, which is as follows:

"In order to establish the defense that said Mabee was under the influence of intoxicating liquor, it is necessary for the defendant herein to show more than that he had taken a drink or drinks of intoxicating liquor; but they must go further and show that he was under the influence of that intoxicating liquor; that it had taken possession of him and that it was such a possession as affected substantially his actions and doings at the time of the injury, and that it must have affected him to such an extent that the jury can say he was not responsible for his acts. It is not necessary, however, that the defendant company should show that the accident resulting in the death of Mabee was the result of or had any connection with such condition of being under the influence of intoxicating liquor, it being sufficient that the defendant shall show that Mabee at the time of his death

was under such influence.  This the defendant must show by a preponderance of the evidence and if it does so show, your verdict must be for the defendant.''

The reason for the objection is that the policy provided that no recovery could be had under the same while the insured was ''under the influence of any intoxicant or narcotic.''  The appellant does not claim that the mere fact that the deceased may have drunk some intoxicating liquor necessarily brought him under this provision; to the contrary, the appellant, at least impliedly, admits that to some degree it must have affected his faculties and responsibility.  The trial court took the view that, before the appellant could avoid the policy on the ground that the insured was under the influence of liquor, it must appear that he was under such influence to a degree that his faculties and responsibility were substantially impaired; that is to say, impaired to a material degree.

This instruction, moreover, should be read together with the next instruction, number 6, which is as follows:

''You are instructed that if you believe from the evidence that Herbert M. Mabee sustained an injury while under the influence of any intoxicant or narcotic on October 17, 1920, said injury resulting in the death of said Herbert M. Mabee, then your verdict should be for the defendant, the Continental Casualty Co.''

These instructions, particularly instruction number 5, might have been drawn with greater precision; and a somewhat stricter definition of the phrase ''under the influence of any intoxicant'' would no doubt have been proper.  But taking these instructions together the trial court merely advised the jury that, if the defendant established by a preponderance of the evidence that the insured at the time of the accident was under the influence of an intoxicant to the extent that his faculties and responsibility were substantially, that is to say, to a material extent, impaired, then the policy was exonerated.  This is not an unfair statement of the law and we do not believe that the jury was misled thereby.

In the case of *Furry's Admr. v. General Accident Ins. Co.*, 80 Vt. 526, 130 Am. St. 1012, 13 Ann. Cas. 515, 68 Atl. 655, 15 L. R. A., N. S., 206, which is the principal case relied on by appellant to reverse the case because of the error in this instruction, the supreme court of Vermont gives the reason for the insertion of this provision in these policies in the following language:

"It is considered by no means unreasonable that the company should require that the insured be under no exciting influence that may affect his self-possession or judgment in the exercise of the faculties essential to his safety."

It would, indeed, seem that it is this very thought which instruction number 5 sought to convey.

But in any event the error in this instruction, if any exists, could not have been prejudicial to the appellant. Bearing in mind the purpose of the provision as expressed by the Vermont court, and the further fact that the burden of proof in this respect was upon the defendant, can it be said that the evidence was sufficient to warrant the assumption that he was under the influence of an intoxicant to such an extent as to affect his self-possession and judgment in the exercise of his faculties which were essential to his safety had he been given the opportunity to do so? We do not think that the evidence justified such inference. Any error in the instruction not prejudicial under the circumstances of this case does not warrant a reversal.

It is next urged that the deceased carried another accident policy without having given written notice thereof to appellant as was required by paragraph 17 of the policy which reads as follows:

"17. If the insured shall carry with another company, corporation, association or society other insurance covering the same loss without giving written notice to the Company, then in that case the Company shall be liable only for such proportion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss and for the return of such portion of

the premium paid as shall exceed the *pro rata* for the indemnity thus determined.''

The uncontradicted evidence of Mrs. Mabee showed that one Hutchinson, the agent of the appellant who solicited the deceased to purchase appellant's policy, and took deceased's application therefor, had been by the deceased and the witness advised of the fact that the deceased carried such other policy at the time. In fact, the latter policy was at the time produced by Mabee and shown to Hutchinson. The application contained a statement that the applicant carried no other insurance. Consequently Hutchinson procured the deceased to make such other application in the face of knowledge on his part that the deceased was actually carrying another policy. Upon this evidence the respondent claims that the appellant is estopped from evading full liability under the policy.

The knowledge of Hutchinson, and his act in procuring the false application, were undoubtedly the knowledge and the act of the appellant, and the policy was therefore issued by the appellant in the face of knowledge on its part that Mabee carried other insurance. It is indeed not urged by appellant that knowledge on the part of Hutchinson was not knowledge on its part. The only specific objection made below to the introduction of this testimony was that it tended to vary the written terms of the policy, and that Hutchinson had no authority, express or implied, to do so.

But it is not claimed by the respondent that Hutchinson had any such authority; nor does she rely upon any waiver by him. Her contention is that Hutchinson's knowledge of the fact that Mabee carried other insurance was the knowledge of the appellant, and that by the procurement of the false application and its acceptance the appellant estopped itself from claiming that it should have had written notice thereof.

In this contention respondent is correct. Therefore, as Hutchinson's knowledge is appellant's knowledge, it cannot defeat the policy in whole or in part. In this behalf, in adopting the language used by the court of appeals of the

state of New York in the case of *Robbins v. Springfield Fire & Marine Ins. Co.*, 149 N. Y. 477, 44 N. E. 159, we said in the case of *Carroll v. Hartford Fire Ins. Co.*, 28 Ida. 466, at p. 480, 154 Pac. 985, 989:

"The rule that an insurance company will not be permitted to defeat a recovery upon a policy issued by it, by proving the existence of facts which would render it void, where it had full knowledge of them when the policy was issued, is too well established by the authorities in this state to require further discussion. . . . . Whether the decisions in this class of cases proceed upon the charitable theory that the insurance company by mistake omitted to make the required indorsement, or intended to waive the provisions regarding it, or upon the idea that its purpose was to defraud the insured, and is for that reason estopped, is of but little consequence, as any one of these theories is sufficient to avoid the defense relied upon in this case."

Before leaving this point it should be pointed out that there is neither pleading nor proof that the appellant paid or tendered the return of so much of the premiums paid as exceeded the *pro rata* for the indemnity which it sought to evade.

It is finally contended that the evidence of waiver was not admissible in the absence of an allegation of waiver in plaintiff's complaint.

Aside from the fact that it was not so much a waiver as an estoppel upon which respondent relied, it was the appellant who first alleged this provision of the policy and its breach as an affirmative defense. No replication thereto was required under our system of pleading. The tender of this issue by the affirmative answer joined the issue, and the respondent, under the issue so joined, was entitled to avail herself of all defenses which she could command, whether they consisted of matters of mere denial, or admitted the facts as pleaded and sought to avoid the same by reason of waiver, estoppel or other legal reason.

On rehearing in the case of *McKune v. Continental Casualty Co.,* 28 Ida. 22, at page 36, 154 Pac. 990, 994, this court said:

"Ordinarily evidence of a waiver is not admissible unless waiver is pleaded. This, of course, is true only where the party relying upon the waiver had an opportunity to raise it by proper pleadings. It is not true if waiver is properly relied upon by a plaintiff as rebuttal matter to meet a defense raised by the defendant, because in this state no pleading by way of replication is necessary. In this case the point of waiver is raised in rebuttal to meet the defense of forfeiture, attempted to be raised by the defendant. The facts upon which the waiver is based are all contained in the stipulation without any objection on the ground of the insufficiency of the pleading. Under these facts we think that it would be the height of technicality to refuse to consider the question of waiver."

We therefore conclude that the judgment of the trial court must be affirmed, and it is so ordered, with costs in favor of respondent.

Dunn, William A. Lee and Wm. E. Lee, JJ., concur.