48 So.2d 60

INTER–OCEAN INS. CO., Inc. v. RICHARDSON.

3 Div. 910.

Court of Appeals of Alabama.
Oct. 3, 1950.

Albert L. Roemer, of Montgomery, for appellant.

Burkett & Watson, of Montgomery, for appellee.

HARWOOD, Judge.

Plaintiff below worked as a file clerk in the State Department of Revenue. In attempting to pull open a heavy drawer in a filing cabinet she received a back injury, resulting in serious physical disability to an extent that her lower limbs became, and still were at the time of trial, almost totally paralyzed.

She entered suit on an accident and health policy she carried in the defendant, company.

Her complaint contained three counts. The first count was for accidental injury with maximum benefits of $100.00 per month for 12 months. The second count was for illness, with maximum benefits of $100.00 per month for six months. The third count claimed for breach of contract.

The defendant plead in short by consent the general issue, with leave, etc.

The defendant also filed a plea of set-off and recoupment, alleging that at the time of the commencement of the action the plaintiff was indebted to ·the defendant in the sum of $540.00 for money paid to the plaintiff under the policy involved for a non-occupation injury, whereas the plaintiff had sustained an occupational injury not covered by the policy.

It appears that on 28 October 1947 plaintiff signed an application for the policy sued on, the application being taken by J. C. Fraser, "Who writes under T. M. Brown." The only questions asked on the application pertained to plaintiff's age, residence, sex, weight, height, earnings,

employer, and beneficiary to be named. No question appears on the application relative to any other insurance carried by the applicant.

The plaintiff testified that: "I told Mr. Fraser the day he took the application that I had an insurance policy that carried the same quarters as his policy and I was not interested in his policy."

No evidence was presented by the defendant tending to contradict the above statement by the plaintiff.

The policy itself carried the following proviso: "17. If the Insured shall carry with another Company, corporation, association or society other insurance covering the same loss without giving written notice to the Company, then in that case the Company shall be liable only for such portions of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the pro rata for the indemnity thus determined."

Plaintiff's injury occurred on 21 May 1948. She signed form 507, "Report of Accident," apparently on 8 July 1948, in which report she stated that she had also made claim for disability on the Mutual Benefit Health and Accident Association. She also stated on this report that she wished three months advance premiums paid out of the claim.

On the same date the defendant issued to the plaintiff a check for $92.80, payable because of her claim, which necessarily was for the full benefit of $100.00 payable under the policy, less the three months advance premium of $7.20.

Mr. T. M. Brown testified that he was general agent for the defendant company, "authorized to act for the company."

Mr. Brown testified that the first check paid plaintiff contained an overpayment, as "we failed to catch" she had insurance with another company, and that the overpayment in the first check was recouped in the next payment, which was in the amount of $20.00. Thereafter plaintiff was paid at the rate of $60.00 per month.

This figure was arrived at in the following manner, according to Mr. Brown: "I examined the file and found she had the same claim with them, and she filed for accident with us. See the way the insurance companies do on health insurance, it is figured on an eighty per cent basis, she made $150.00, eighty per cent of that is $120.00; the maximum; the Mutual Benefit Health and Accident Association is liable for $60.00 and we are liable for $60.00."

The jury returned a verdict in favor of the plaintiff and assessed her damages at $360.00, which was the maximum amount due after allowance for the $540.00 already paid by the defendant insurance company, the court having instructed the jury that recovery could be had only up until the time of filing suit, or for nine months.

Defendant's motion for a new trial being denied, appeal was perfected to this court.

Appellant's counsel argues that: "(a) The Trial Court erred in refusing to grant the motion for a new trial in that the great preponderance of the evidence established the fact that the verdict of the jury was excessive, and that Standard Provision # 17 of the policy was not considered."

This contention is in our opinion without merit.

The uncontradicted evidence of the plaintiff shows that at the time the application for this policy was taken she informed Mr. John Fraser, who according to the application itself "writes under T. M. Brown," that she had other insurance covering the same "quarters." The application was nevertheless taken by Mr. Fraser. No evidence was presented by the defense tending to show any limitations on the authority of Mr. Fraser, "who writes under T. M. Brown." We must presume therefore that Mr. Fraser's acts and knowledge were the acts and knowledge of Mr. Brown. Mr. Brown was a general agent of the defendant company. Notice to a general agent, as distinguished from a mere soliciting or collecting agent, is imputable to the company. United States Health and Accident Ins. Co. v. Goin, 197 Ala. 584, 73 So. 117; Royal Ins. Co. v. Eggleston, 19 Ala.App. 638, 99 So. 828; Piedmont Fire

Ins. Co. v. Tierce, 245 Ala. 415, 17 So.2d 133.

In Mabee v. Continental Casualty Co., 37 Idaho 667, 219 P. 598, 601, 37 A.L.R. 348, the Supreme Court of Idaho considered a question highly similar to the present one, except that the insured had *in a written application* stated that no other insurance was carried, though the applicant did inform one Hutchinson, apparently only a soliciting agent for the defendent insurance company, that he had other insurance. The policy carried a proration clause identical with clause 17 the present policy. The conclusions of the Idaho court on this point were as follows:

"The knowledge of Hutchinson and his act in procuring the false application were undoubtedly the knowledge and the act of the appellant, and the policy was therefore issued by the appellant in the face of knowledge on its part that Mabee carried other insurance. It is indeed not urged by appellant that knowledge on the part of Hutchinson was not knowledge on its part. The only specific objection made below to the introduction of this testimony was that it tended to vary the written terms of the policy, and that Hutchinson had no authority, express or implied, to do so. But it is not claimed by the respondent that Hutchinson had any such authority; nor does she rely upon any waiver by him. Her contention is that Hutchinson's knowledge of the fact that Mabee carried other insurance was the knowledge of the appellant, and that by the procurement of the false application and its acceptance the appellant estopped itself from claiming that it should have had written notice thereof.

"In this contention respondent is correct. Therefore, as Hutchinson's knowledge is appellant's knowledge, it cannot defeat the policy in whole or in part. In this behalf, in adopting the language used by the Court of Appeals of the state of New York in the case of Robbins v. Springfield F. & M. Ins. Co., 149 N.Y. 477, 44 N.E. 159, we said in the case of Carroll v. Hartford Fire Ins. Co., 28 Idaho 466, 480, 154 P. 985, 989: 'The rule that an insurance company will not be permitted to defeat a recovery upon a policy issued by it, by proving the existence of facts which would render it void, where it had full knowledge of them when the policy was issued, is too well established by the authorities in this state to require further discussion. * * * Whether the decisions in this class of cases proceed upon the charitable theory that the insurance company by mistake omitted to make the required indorsement, or intended to waive the provisions regarding it, or upon the idea that its purpose was to defraud the insured, and is for that reason estopped, is of but little consequence, as any one of these theories is sufficient to avoid the defense relied upon in this case.' "

It should also be observed that there is abundant evidence tending to show that the appellant has neither paid nor tendered the return of so much of the premiums paid as exceeded the pro rata for the indemnity it seeks to evade. Indeed the full premiums were paid to appellant, and retained by it until after the institution of this suit, although the insured in her very first report of loss made in July 1948 indicated that she carried other insurance.

Appellant's counsel further contends that the lower court erred in refusing appellant's written requested charge No. 3. This charge was affirmative in nature as to count 1 of the complaint.

The theory of appellant's argument is that under the terms of the policy only accidents of a nonoccupational nature occurring during the course of work are covered.

The insuring clause of the policy insures against: "Loss resulting solely from bodily injuries, effected directly and independently of all other causes through accidental means (excluding suicide or any attempt thereat, while sane or insane), and which bodily injuries do not arise out of nor in the course of any employment for compensation, profit or gain, hereinafter referred to as 'such injuries,' and * * *."

Other provisions appearing in the policy are as follows:

"In Section 5(b) (1) The Accident Insurance under this policy covers all bodily injuries, fatal or otherwise, subject to the conditions herein specified, except those

sustained by the Insured (1) In Consequence of employment; * * *

* * * * * *

"Section 5(e) This policy does not cover any injuries or sickness for which Workman's Compensation is payable under the law of the State in which the Insured resides, * * *."

However, a special rider was added to the policy as follows: "It is hereby agreed that insurance clause (1) of this policy is amended to cover 'such injuries' arising in the course of employment, provided 'such injuries' are not payable under the workman's compensation law, subject otherwise to all conditions and provisions in the policy."

Thus the policy was amended to cover accidents "arising in the course of employment," though it is to be noted that the insuring clause covered only those accidents which "do not arise out of nor in the course of any employment."

The terms "arises out of" *and* "in the course of employment" appearing in our workman's compensation laws have been clearly interpreted and are well understood.

 The phrase "in the course of" refers to the time, place, and circumstances under which the accident took place, while the phrase "arises out of" employment refers to the employment as the cause and source of the injury. Both conditions must be present to warrant recovery under our workman's compensation laws. Wells v. Morris, 33 Ala.App. 497, 35 So.2d 54.

We have found no case in this jurisdiction construing the phrase "arising in the course of employment" as it appears in the special rider, nor indeed have we found any such case from other jurisdictions.

The phrase "arising in" is in our opinion the equivalent of and synonymous with "arising out of," or "arising because of" the course of employment. It has reference to the employment being the cause of the accident. This being so, the injury incurred by the appellant, which clearly sprang out of, and resulted from the course of her employment, was fully covered by the terms of the special rider amending the policy.

No attempt was made in the special rider to amend Section 5(b) (1) excepting from the policy those injuries sustained by the insured "in consequence of employment." This section is therefore contradictory and repugnant to the special rider.

Where an insurance policy contains repugnant, ambiguous, or contradictory clauses, a court will enforce such as are in favor of an insured and prevent a forfeiture. North Carolina Mutual Life Ins. Co. v. Terrell, 227 Ala. 410, 150 So. 318, 89 A.L.R. 1459; Equitable Life Assur. Soc. v. Hill, 230 Ala. 505, 161 So. 800; Pearl Assur. Co. v. Hartford Fire Ins. Co., 239 Ala. 515, 195 So. 747.

The tendencies of the evidence submitted by the plaintiff below were in our opinion entirely sufficient, if believed under the required rule, to support the verdict and judgment rendered.

Other points are argued in appellant's brief. Under the views and conclusions above reached the principles contended for become inapplicable to this case.

Affirmed.