## DARBY LUMBER CO. *v.* HILL.

Division A.   Nov. 13, 1950.

No. 37632 (48 So. (2d) 484)

**Stone & Stone,** for appellant.

818

Pegram & Pegram, for appellee.

**Robert E. Smith**, also for appellee.

## Kyle, J.

Appellee, Otis Hill, sued the appellant, H. W. Darby, doing business under the trade name of Darby Lumber Company, a nonresident of the State of Mississippi, in an attachment suit in the chancery court of the First Judicial District of Yalobusha County for damages for breach of contract, and obtained a judgment, and from that judgment the company appeals.

The appellant owned a large tract of timbered land in Yalobusha County, and during the month of October 1947 entered into a contract with the appellee, who was engaged in the sawmill business, for the cutting of the timber and the manufacture of same into lumber. The terms of the contract were apparently agreed upon orally between the appellee, Otis Hill, and R. W. Boren, the resident general manager for the appellant in Mississippi, and Hill proceeded to move his mill on the land in question. Before the timber cutting and manufacturing operations were actually begun, however, the parties entered into a written contract, which was dated the 14th day of October, 1947, and which was signed by the Darby Lumber Company, by R. W. Boren, and by Otis Hill. The contract provided that Hill should cut

the timber on the above mentioned land and manufacture the same into lumber for the Darby Lumber Company, and that he should be paid therefor the sum of $30 per thousand feet for the cutting of the logs and manufacturing same into lumber and stacking same on the yard, the amount of lumber to be estimated and paid for every two weeks. The contract recited that Hill was already moving his mill onto the land, and that he was to begin operations not later than October 20, 1947; that Hill was to devote his full time to the timber cutting and sawmill operations, and that he was to operate his mill to capacity, except when prevented by bad weather, breakdown or other conditions beyond his control; that Hill should furnish the mill, all equipment and machinery and all labor necessary for the cutting of the timber, manufacturing the same into lumber and delivering the lumber to the Darby Lumber Company; that all lumber should be stacked in 6-ft. stacks; that all species of hardwood lumber should be stacked separately; and that all pine lumber should be stacked separately. The contract also provided that Hill should cut the timber, manufacture the same into lumber and deliver the same to the yard in a skillful and workmanlike manner, that the ground should be plowed around the millsite and lumberyard, and then burned off before the stacking of any lumber thereon. There were other details of the written contract, which we do not deem it necessary to set out in this opinion.

Hill entered upon the performance of the contract and during the months of November, December and January cut the logs and manufactured into lumber approximately 186,000 feet of lumber, which was inspected by Boren, the manager in charge, for the Darby Lumber Company, and was paid for promptly according to the terms of the contract. The last substantial payment for work performed by Hill under the contract was made on January 20, 1948. Bad weather, rain, snow and ice, according to the testimony of witnesses,

made it impossible to carry on timber cutting and logging operations during the next several weeks.

The lumber which was manufactured by Hill during the several weeks that operations were carried on was stacked upon the lumberyard provided for the purpose in 8-ft. stacks, instead of 6-ft. stacks, as provided for in the written contract. Hill testified that Boren, representing the Darby Lumber Company, agreed that the lumber might be stacked on 8-ft. sticks and that no objection was interposed by Boren or Darby prior to the termination of the contract to the use of 8-ft. sticks instead of 6-ft. sticks, for stacking the lumber.

On the 22nd day of March, 1948, the Darby Lumber Company, acting by and through R. W. Boren, its general manager in charge, gave written notice to Hill to refrain from any further effort to carry out the contract and terminated the contract entirely on that date. In the notice thus given to Hill the Darby Lumber Company charged that Hill had completely failed to carry out the terms of the contract in the following particulars, to wit: That Hill had failed to devote his full time to the operation of the mill, and had failed to operate the mill to its full capacity; that he had failed to manufacture the timber into lumber in a skillful and workmanlike manner; that he had failed to cut the timber into lumber of uniform thickness; that he had failed to plow the ground around the millsite and the lumberyard and burn off the ground before stacking lumber thereon; that he had violated the provisions of the contract requiring that the lumber be stacked on 6-ft. sticks; and that he had failed to carry out the provisions of the contract requiring that separate stacks be made of the lumber of various thicknesses, widths and lengths.

At the time of the termination of the contract there still remained on the land uncut timber in the amount of approximately 330,000 feet. After Hill's contract had been terminated by the Darby Lumber Company, the Darby Lumber Company made arrangements with one

Ellett to take over the sawmill operations and complete the cutting of the timber into lumber. Ellett owned and operated a sawmill of his own, and, during the active operations of Hill under his contract, Ellett had assisted Hill in cutting the timber and manufacturing the same into lumber. The 186,000 feet of lumber which was manufactured by Hill under his contract prior to the date of the termination of the contract included the lumber which had been manufactured by Hill and Ellett jointly; and no complaint was ever made, so far as the record shows, of Ellett's work. Four letters were introduced in evidence which were written by H. W. Darby to Hill, and which were dated December 29, 1947, and January 5, January 7, and January 19, 1948. In none of these letters had Darby made any complaint about the stacking of the lumber on 8-ft. sticks instead of 6-ft. sticks, or any other complaint as to the manner in which Hill was carrying out his contract.

In his bill of complaint Hill stated that, if he had been permitted to complete his contract, he would have made at least $10 per thousand feet profit in the carrying out of his contract, and he asked for a decree for damages in the sum of $4,000 on account of loss of profits due to the wrongful termination of his contract, and the additional sum of $2,000 as special damages for being forced to remove his mill from the land and for being unable to find employment after his contract had been terminated. He abandoned his claim for the $2,000 before the trial began, and offered no proof to support that item of his claim.

The proof disclosed that Hill was cutting and manufacturing the timber into lumber and placing the lumber in stacks at a maximum cost to him of $21 per thousand feet, and that his minimum profit was approximately $9 per thousand feet. Upon the termination of the contract, Hill, according to his own testimony, endeavored to get other work for himself and his mill, but between

that time and August 1, 1948, the approximate date when he could have completed his contract, he was able to earn only $150.

The case was tried before the chancellor upon bill, answer and proof, including both depositions and oral testimony, and the chancellor rendered a ten page opinion, in which he embodied his findings of facts, as well as his conclusions of law.

The chancellor found, and so stated in his opinion, that there had been no breach of the contract by the complainant; that the defendant had wrongfully terminated the contract; and that the complainant was entitled to recover damages on account of loss of profits which he had sustained as the result of the wrongful termination of the contract. The chancellor found from the testimony that there were 330,000 feet of timber that the complainant could have cut if he had been allowed to complete his contract, and on which he lost $9 a thousand profit which he would have made, if he had been permitted to complete his contract. The chancellor also found that the complainant, after being thrown out of employment, had made $150 during the time he was thrown out of employment, and that the sum of $150 should be deducted from the $2,970 loss of profits; and pursuant to these findings the chancellor entered a decree in favor of the complainant and against the defendant, for the sum of $2,820.

From a careful reading of the record in this case, including the voluminous testimony of witnesses, we think that the findings of the chancellor are amply sustained by the evidence. Although the appellant, in the original notice of the termination of the contract dated March 22, 1948, and in his answer alleged that the appellee had failed to carry out his contract in many particulars, the chancellor found that these alleged violations of the terms of the contract by the appellee were not supported by the evidence, except as to the charge that the lumber was stacked upon 8-ft. sticks instead of

6-ft. sticks; and on that point the chancellor found that the appellant had waived the requirement of the contract that the lumber should be stacked upon 6-ft. sticks. The evidence as a whole shows a substantial performance of the contract by the appellee up to the time the appellant terminated the contract.

The proof does show that the appellee, for some reason that is not made clear in the record, was absent from the site of the sawmill operations for a period of two or three weeks, probably during the month of February, 1948. But the proof also shows that the winter rains, snow and ice were especially severe at that time, and that logging operations could not be carried on in any event because of the weather conditions.

The proof shows that the appellee stacked the lumber on 8-ft. sticks instead of 6-ft. sticks as provided in the contract. But the appellee testified, and in this he was supported by the testimony of other witnesses, that it was with the knowledge, consent and agreement of Boren, the general manager in charge for the appellant, who was acting for the appellant in all matters relating to the sawmill operations, that the lumber was stacked on 8-ft. sticks instead of 6-ft. sticks; and the chancellor expressly found that the variation from the terms of the written contract as to the stacking of the lumber on 8-ft. sticks instead of 6-ft. sticks was made with the expressed or implied approval of Boren, and that the acceptance of the lumber by Boren in 8-ft. stacks constituted a waiver of the right to have the lumber stacked on 6-ft. sticks, instead of 8-ft. sticks. The record shows that the appellant on November 12, 1947, accepted and paid for 35,788 feet of lumber at the contract price of $30 per thousand, and that appellant on December 3, 1947, accepted and paid for 32,830 feet, and on December 20, 1947, accepted and paid for 52,412 feet, and on January 20, 1948, accepted and paid for 55,000 feet, all at the contract price of $30 per thousand. All of this lumber had been inspected and accepted by Boren, appellant's man-

ager in charge, and it was during this same period of time that appellant wrote four letters to the appellee from appellant's Memphis office, relating to the timber cutting and sawmill operations, and in none of these letters were complaints made of failure on the part of the appellee to perform properly his contract. These facts constitute strong evidence to support the findings of the chancellor that there had been a substantial compliance with the terms of the contract by the appellee.

The most serious argument that the appellant makes in his brief for reversal of the decree of the lower court is his argument that the court erred in permitting proof to be made by the appellee of the waiver of the requirement in the written contract that the lumber should be stacked upon 6-ft. sticks. The appellant contends that in view of the fact that appellee sued on a written contract which required that the lumber be stacked upon 6-ft. sticks he should not have been permitted at the trial, when proof was made that the lumber was stacked on 8-ft. sticks, to make proof of an oral modification of that provision of the contract, or to make proof of facts showing a waiver of the requirement in the contract by the appellant. The appellant also contends that if the appellee intended to rely upon an oral modification of the provision in the contract that the lumber should be stacked upon 6-ft. sticks, or a waiver of that requirement by the appellant, such modification or waiver should have been properly pleaded, and in the absence of a proper allegation showing such modification or waiver, proof could not be made of the alleged modification or waiver upon the trial of the case.

As a general rule estoppel or waiver must be pleaded if it is to be relied upon as a defense in the trial of an issue. ▮▮ But the charge that the appellee failed to comply with the requirement of the written contract that the lumber should be stacked upon 6-ft. sticks, was made as a part of the answer filed by the appellant. The answer was not made a cross bill. No further plead-

ing was required on the part of the appellee. The cause was triable upon the bill, answer and proof.

The precise question presented here was discussed by the Idaho court in the case of Mabee v. Continental Casualty Co., 37 Idaho 667, 219 P. 598, 602, 37 A. L. R. 348, and in the opinion on page 356 of the report the Court used this language: ''It is finally contended that the evidence of waiver was not admissible in the absence of an allegation of waiver in plaintiff's complaint. Aside from the fact that it was not so much a waiver as an estoppel upon which respondent relied, it was the appellant who first alleged this provision of the policy and its breach as an affirmative defense. No replication thereto was required under our system of pleading. The tender of this issue by the affirmative answer joined the issue, and the respondent, under the issue so joined, was entitled to avail herself of all defenses which she could command, whether they consisted of matters of mere denial or admitted the facts as pleaded and sought to avoid the same by reason of waiver, estoppel, or other legal reason.''

Where the bill of complaint contains an allegation of performance, as in this case, up to the time of the termination of the contract by the defendant, we do not think that it was necessary for the complainant to allege a waiver on the part of the defendant of the provision of the contract which required the use of 6-ft. sticks for the stacking of the lumber, as proof of the waiver of that requirement could be made under the general allegation of performance, if such proof became necessary after the defendant had filed his answer. Stephens v. Union Assurance Society, 16 Utah 22, 50 P. 626, 67 Am. St. Rep. 595.

In any event, if the ruling of the court on the admissibility of the proof of waiver had been adverse to the complainant, complainant would have been entitled to amend his bill to conform to the proof as thus developed,

even during the progress of the trial, upon such terms as the court deemed proper.

This point loses its importance, however, in view of the fact that the chancellor found, and the evidence abundantly supports such finding, that there was a substantial performance of the contract by the appellee up to the time the contract was terminated by the appellant.

As stated in Hickory Investment Co. v. Wright Lumber Co., 152 Miss. 825, 119 So. 308, 310, ██ ██ "In equity it has been generally held that, where a contract has been substantially performed, the party so performing may recover as for a completed performance, less such damages as the other party may have been put to by reason of the matters not performed."

The principle stated above was also applied in the case of Standard Millwork & Supply Co. v. Mississippi Steel & Iron Co., 205 Miss. 96, 38 So. (2d) 448, 450, which was a building contract case. In discussing the application of the doctrine of substantial performance in the last mentioned case, the court made it clear that a contractor could not invoke the rule of substantial performance unless he had acted in good faith and the court made the further statement that "the rule of substantial performance cannot be invoked where the failure to perform is wilful, intentional or due to carelessness, unless the omission falls within the category of de minimis, or unless the omission, though intentional, is due to a belief that performance in that respect is not required."

██ ██ We think that the proof offered by the appellee to show an oral modification of the provision of the contract requiring that the lumber be stacked upon 6-ft. sticks, and a waiver of that requirement by the appellant, was properly admitted by the court. If, however, no proof had been offered on that point, the result, as we view the case, would have been the same. Whether the lumber was stacked on 6-ft. sticks or 8-ft. sticks was, in view of the record as a whole, immaterial.

It was so regarded by the appellant and his general manager in charge when they accepted and paid for the 186,000 feet of lumber that appellee cut and stacked during the 90-day period immediately following the commencement of operations under the contract. And the appellant during the trial offered no proof to show that any actual damage had resulted from the stacking of the lumber on 8-ft. sticks instead of 6-ft. sticks.

We think that the findings of the chancellor on the facts are amply supported by the evidence, and that there is no error in the record that would justify a reversal of the judgment of the lower court. The judgment is therefore affirmed.

Affirmed.